SARAH CUMMINGS vs. THE CITY OF HARTFORD.

Third Judicial District, Bridgeport, Oct. Term, 1897. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Notice to a policeman of a dangerous excavation in a sidewalk may be notice to the city, provided the ordinances and department rules make it the duty of such officer to inspect the condition of the streets, and in case of necessity to erect suitable barriers or safeguards for the protection of the public from injury ; although the street department is the immediate representative of the city in respect to the maintenance and repair of its highways.

The memorandum of decision forms no part of the official record, unless made such by the finding.

If such memorandum announces conclusions of law controlling the decision, which the finding subsequently made does not present, resort may be had to it, under certain limitations, in aid of the appeal ; but there is no occasion for this where no such variance appears.

The case of *Boucher* v. *New Haven*, 40 Conn. 456, explained and distinguished.

[Argued November 4th—decided November 30th, 1897.]

ACTION to recover damages for personal injuries caused by a defective highway, brought to the Superior Court in Hartford County and heard in damages to the court, *Elmer, J.*, after the defendant had suffered a default ; facts found and judgment rendered for the plaintiff for $800 damages, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The finding stated the following facts :—The owner of a

lot on Albany avenue in the city of Hartford, without any order or authority from the city, employed a contractor to replace a flag sidewalk in front of his lot by a granolithic one. The contractor began work early on August 13th, and stopped for the night at 6 P. M., leaving an excavation in the walk, from which the old flagging had been removed, 50 feet long, 5 feet wide, and 3 feet deep, adjoining the curbstone. An inner rim of the old sidewalk was left untouched, which was 3 or 4 feet wide. At each end of the excavation a plank, upon which a barrel was placed, was laid from this rim to the curb. The city charter and ordinances made it a misdemeanor to make any excavation in any street without a permit from the board of street commissioners, and a nuisance to make one without also protecting the public against danger "by means of fences, lights and any other precautions expedient or necessary for such protection." No such permit was obtained for this excavation. The city ordinances authorized any police officer of the city to keep all streets free from obstruction, and to require all persons whom they might see unlawfully obstructing them to desist therefrom; and particularly provided that policemen "shall especially attend to the keeping of the streets and sidewalks of the city clear of all unlawful obstructions, and shall report to the chief of police, through the captain, all unlawful obstructions thereof, who shall take immediate steps to remove the same." There was also a standing rule of the police department as follows: "Rule concerning the duties of a policeman. If he discovers any defect in the sidewalks or streets, large stone, or other obstruction upon the street liable to produce inconvenience or injury, he shall remedy or remove the same, or, if that is not possible, he shall take such measures as the case may require to prevent injury to the public, and immediately report the same to the chief of police."

Early in the morning of the day on which the excavation in question was begun, a police officer about to go on duty near said premises, noticed that the excavation was in progress, but made no inquiry as to whether a permit had been obtained for the work from the street board, as required by

law. At about 7 o'clock in the evening of that day, when going off duty, he met the officer then going on duty on the same beat, and called the attention of the latter to the excavation in question, and its apparently dangerous character as to foot passengers, and suggested to him the propriety of providing suitable protection to guard them against injury, which might result from the same. Said officer then on duty, proceeded to the place in question and found the excavation as above described. He procured lanterns, which were lighted and placed, one upon the plank at the east end and one upon the plank at the west end of the excavation. No further steps were taken to guard the public from accident at this place. The officer proceeded to the discharge of his duty upon his beat, and thereafter paid no further attention to the said excavation until after the accident complained of.

About twenty-five feet easterly from the excavation, at the time of the accident, stood two shade trees whose foliage cast a shadow over and into the ditch at its eastern end, and to a considerable extent obstructed the light from an electric lamp situated about 225 feet east of the excavation. There was at that time no other source from which light was thrown upon the excavation, excepting a light from a store at the western extremity of the same, which was of no assistance or protection to persons approaching it from the east. The night was dark and the small light at the corner of the eastern end of the ditch offered little, if any, protection to the pedestrians approaching this place from the east.

Albany avenue at this place is a crowded street, being near Main street, and many pedestrians pass over it in the night season.

At about half past eight or nine o'clock in the evening of the day in question, the plaintiff, Sarah Cummings, having returned to Hartford after an absence of several days—and unaware of the excavation—in company with her sister, was proceeding along said street, approached the excavation at its eastern end, and walking by this point along the remaining portion of the flagwalk, advanced a short distance by the side of the ditch, when she fell in, followed by her companion.

Neither at the side of the excavation where the plaintiff fell, nor at any point on the entire length of the side, was there any railing, board, or other barrier to protect pedestrians upon the said walk.

The provisions made by the police officer in question, by placing a lantern with dim lights at the ends only of the excavation, without any protection at the side, in a dark night in a crowded street where persons were constantly passing at that time in the evening, were inadequate properly to protect the public. The court found that this excavation, under the circumstances, constituted a dangerous defect in the said public street, and that the city of Hartford was guilty of negligence in not providing adequate protection for the public against injury from the same.

The plaintiff, at the time of the accident, was in the exercise of ordinary care and prudence, and was not guilty of contributory negligence.

It was the duty of the police officer who first discovered the excavation and the dangerous condition in which it would necessarily leave the walk, to have prevented the further unlawful obstruction of the highway; and thus a reasonable attention to the same by the city authorities would have, by proper precautions, prevented the accident. The measures finally taken by the police officer for the safety of the public were inadequate and insufficient. The defendant city had notice of the defect in the sidewalk, with sufficient opportunity to have avoided the accident by the use of reasonable means to protect the public.

Upon these facts the defendant made the following claims, all of which were overruled: (1) That adequate and reasonable protection was afforded the plaintiff and the public, by the measures taken as aforesaid, and the city was not, therefore, liable. (2) That actual notice should have been given to the street department, or its agents, of the existence of the excavation, or that it should have been in existence a sufficient length of time to have become notorious, and thus have attracted the attention of the city, in order to make the latter liable for neglect. (3) That as the excavation in question

was made without a permit from the proper authorities of the city, and completed upon the day of the accident, whatever knowledge persons in authority had of the same, the street department had not been notified, and therefore the city did not have sufficient notice to charge it with liability except for nominal damages.

It was also assigned for error that the court ruled that it was the duty of the police officer who first discovered the excavation to have prevented the further obstruction of the highway, although it appears that the work which he saw going on was the laying of a new sidewalk, and there was nothing to lead him to suppose that it was being unlawfully done; that his failure to prevent it was conduct attributable to the city of Hartford, for whose results to the plaintiff the city must answer in substantial damages; and that, under the circumstances, it was the duty of the city to provide adequate protection against injury from the said excavation made in the process of constructing a sidewalk.

*Edward D. Robbins* and *William J. McConville*, for the appellant (defendant).

The case of *Boucher* v. *New Haven*, 40 Conn. 456, is not "similar" to the case at bar, as held by the trial court. In a case where the city has not ordered or contemplated the construction of a sidewalk, the duty of the city to remedy a defect produced by the work of construction does not arise until it has knowledge or means of knowledge that such work is in progress. *Manchester* v. *Hartford*, 30 Conn. 118; *Bill* v. *Norwich*, 39 id. 222; *Davis* v. *Guilford*, 55 id. 351, 357. The court below ruled, as appears from the memorandum of decision, that the policemen whose beat included Albany avenue, represented the city so far as the care of the streets was concerned, and that notice to them was, therefore, full notice to the city. If such is the law for the city of Hartford, it must be because of the existence of special legislation to that effect. The general rule is, as stated by Judge Dillon in his work on Municipal Corporation (4th ed. § 975), that "*police officers appointed by a city are not its agents or servants*, so as

to render it responsible for their unlawful or negligent acts in the discharge of their duties." *Farrell* v. *Bridgeport*, 45 Conn. 195; *Perkins* v. *New Haven*, 53 id. 214; *Torbush* v. *Norwich*, 38 id. 225; *Hart* v. *Bridgeport*, 13 Blatch. (U. S.) 289; *Buttrick* v. *Lowell*, 1 Allen, 172; *Cobb* v. *Portland*, 55 Me. 381; *Caldwell* v. *Boone*, 51 Iowa, 687.    Neither the charter nor the ordinances of the city purport to transfer to policemen the care of the streets and sidewalks.    Moreover, any ordinances would be void which attempted to transfer to policemen the care of the streets and sidewalks of the city of Hartford.    *Hartford* v. *Hartford Electric Light Co.*, 65 Conn. 324, 333.    There is a rule of the police department, not established by law nor adopted by the court of common council, which directs the policemen to do what they reasonably can to prevent injury to the public by defects in the sidewalks or streets.    This rule is a voluntary assumption by the police department of a service to the public not required by law nor ordered by the city.    The police commissioners, who made this rule, and the policemen who are subject to it, " are state or public agents engaged in performing public and governmental duties," and " are not private agents or servants of the city."

*William F. Henney*, for the appellee (plaintiff).

Under the charter and ordinances of the city and the rules of the police department, it was the duty of police officers to prevent all unlawful excavations in the city streets, and if made without their knowledge or inability to prevent, to immediately take such steps as the case required to protect the public from inconvenience and injury which might arise from such excavation.    In cases of this kind against municipal corporations, the question of notice is involved in determining the question of negligence, and the finding by the court below that the city had notice of the defect and a reasonable time to have remedied it, or protected the public against it, is not reviewable here.    2 Beach on Pub. Corp. § 1521.    If, however, the question of implied notice is reviewable, the facts found fully justify imputed notice to the city.    But the

city had actual notice of the defect in question, as notice to a police officer was notice to the city. 2 Beach on Pub. Corp. § 1521; *Rehberg* v. *New York*, 91 N. Y. 137; *Twogood* v. *New York*, 102 id. 216; *Denver* v. *Deane*, 10 Colo. 375; *Bowan* v. *Tripp*, 14 R. I. 342; *Goulet* v. *Louney*, 159 Ill. 471; *Hawley* v. *Gloversville*, 33 N. Y. Supp. 647. But no notice of any kind, in the case at bar, need be proven in order to charge the city with liability. *Boucher* v. *New Haven*, 40 Conn. 456.

BALDWIN, J. Every municipal corporation which is charged with the duty of maintaining the highways within its limits in sufficient condition of repair, is bound to make use of such agencies as the law may provide, or reasonable care demand, for ascertaining from time to time what their condition is, and remedying any defects that may be found to exist. By the charter of the city of Hartford, the board of street commissioners, whose duty it is to appoint a superintendent of streets, is made such an agency (VI. Special Laws, p. 743); but it is not necessarily the only one to be employed. The common council could not withdraw the general supervision of the streets from that board, but they could aid or supplement the exercise of its powers, by appropriate ordinances. *Hartford* v. *Hartford Electric Light Co.*, 65 Conn. 324, 329. The charter also provides for a city police department, and leaves it to the proper municipal authorities to prescribe in detail the duties of the policemen, (V. Special Laws, p. 322). Their primary duty is to guard the city by day and night and preserve the public peace. In this they are the agents of the law, and in a certain sense officers of the State. *Farrell* v. *Bridgeport*, 45 Conn. 191, 195; *State* v. *Pinkerman*, 63 id. 176, 182. But as the performance of this duty necessarily involves patrolling the streets, it is obvious that the patrolmen are in a position which gives them special opportunities for inspecting the condition of these streets, and observing any defects in them as soon as they arise. As they are appointed and paid by the city, and there is no incompatibility between the function of guarding the public

against acts of criminality, and that of guarding it from harm by acts of trespass or negligence, it was proper for the defendant to lay down the duties of policemen, as was done in the ordinance (Chap. XIII.) and rule, set forth in the finding. By thus commissioning an existing agency to inspect the street and in case of need to remedy defects, the city was relieved of a needless expense which would have been incident to the organization of a patrol force of equal efficiency, to act under the orders of the board of street commissioners.

While, therefore, that board is the immediate representative of the city in respect to whatever pertains to the repair of streets, and notice to it of any want of repair is, as matter of law, notice to the city, it is also true that every patrolman on the police force has been placed in such a position that notice to him of any such want of repair may, under certain circumstances, be notice to the city. Such circumstances the Superior Court held to exist, in the case at bar, and there is nothing in the facts found to impugn the validity of the conclusion.

The ruling that the policeman on day duty who first discovered the excavation should have " prevented the further unlawful obstruction of the highway," was incorrect. It assumes that he knew or ought to have suspected that the work was being done without a permit. On the contrary, he had a right to presume that before undertaking to relay a sidewalk upon a crowded street, the contractor had obtained the necessary authority from the board of street commissioners. He was, therefore, in no fault for not inquiring as to this point, or for not immediately reporting what he had seen to the chief of police.

The policeman on night duty, however, was placed in a different position. His attention was called about sundown to the dangerous condition in which the sidewalk had been left, and the obvious insufficiency of the barriers placed for the protection of pedestrians. He procured a couple of lanterns and set one on the plank at each end of the ditch, but left it otherwise wholly unguarded on either side for its entire length of fifty feet; proceeding upon his beat, without tak-

ing any further precautions, or making any report to his superiors. In this he failed to comply with the rules of the department, which provided one of the principal means relied on by the city for the discharge of its duty of keeping the streets in repair. The Superior Court was warranted in finding that under all the attending circumstances the city had sufficient notice of the defect to enable it to provide proper safeguards to protect those passing upon the street, and that it was negligent in not making such provision. It is true that in arriving at these results some weight was attached to what was held to be the default of the first policeman; but the conclusion as to actionable negligence was amply justified by the conduct of the second, and the judgment is fully supported by the finding that the measures which he took for the safety of the public were inadequate and insufficient.

In the memorandum of decision, filed at the date of the judgment, and several weeks before the finding, the following language is used: " The rule that notice of a defect in the highway to any municipal officer having a duty to perform in this direction is notice to the municipality, seems to cover this case. Aside, however, from the legal question of notice, the city cannot plead the same in the negligent omission of its own duty."

The defendant claims that from this it appears that the court was governed in rendering the judgment by the assumption that want of notice to the city of the defect in the street was of no importance. This does not appear in the record, of which the memorandum of decision forms no part, unless made such by the finding.

Such an assumption, however, was apparently made, and was probably founded on a misconception of the ruling of this court in *Boucher* v. *New Haven*, 40 Conn. 456. In that case, a city was sued by a pedestrian who fell into a hole carelessly left unguarded in relaying a sidewalk in front of his lot, and notice of the existence of the defect to the municipal authorities was held unnecessary. There, however, the city had ordered the new sidewalk laid, and was therefore put upon inquiry as to the commencement of the work.

Here, on the other hand, the landowner proceeded upon his own motion, and there was nothing to lead the city to suppose that any such improvement was in contemplation. It would therefore have been fatal to the plaintiff's case had she failed to prove either notice in fact, or such an omission by the city to exercise that reasonable supervision over its streets which was incident to its duty to maintain them in repair, as would be of itself negligence naturally leading to her injury.

But the memorandum of decision states, in effect, that there was notice in fact by reason of notice to a proper municipal officer; and in this respect is in accord with the finding.

It is on the sufficiency of the finding to support the judgment that the case turns. If a memorandum of decision announces conclusions of law controlling the decision, which a finding subsequently made does not present, resort may be had to it under certain limitations in aid of an appeal. *Styles* v. *Tyler*, 64 Conn. 432, 439, 463. But there is no occasion for this where no such variance appears. None is shown in the present case. The memorandum of decision, as to the point now in question, simply amounts to a statement by the trial judge that if a condition of things existed which in his opinion did not exist, a certain conclusion of law would follow. This statement was incorrect, but it related to a question not raised by the facts actually found. These cover the case and are decisive of the issue.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.