RUDOLPH JACOBSON ET AL. *vs.* WILLIAM J. HENDRICKS, JR., EXECUTOR, ET ALS.

Third Judicial District, New Haven, January Term, 1910.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, JS.

Where writings relied on to show a memorandum of a contract sufficient to satisfy the requirements of the statute of frauds (§ 1089) are set forth, pursuant to an order of court, in the complaint, it may properly be assumed on demurrer that there are no other writings which could be of assistance in establishing the existence of such a memorandum.

In order to adjudge such a complaint insufficient under the statute of frauds, upon demurrer, it must appear that it is impossible to offer any competent evidence of the existence of the necessary memorandum, either by virtue of some one or all of the writings taken together, or of any one or all of them when supplemented by such oral proof as the law permits in such cases.

A written proposition or offer to buy land, made to an agent of the owners, which expressly provides that it is to be subject to their approval, is not enforcible against them or any of them in the absence of written evidence of the assent of all of them to its terms.

An act of one individual will not be treated as the act of several, unless the former is alleged in the complaint to be the agent of the latter.

A grantee of land who buys with full knowledge that negotiations have been made for its sale to others, can make the same defenses, in an action by them for a specific performance of the alleged contract, that are open to his grantor.

*It seems* that letters, entries and memoranda not intended for a prospective purchaser or known to him, may be deemed to constitute a sufficient memorandum under the requirements of the statute of frauds, or a part of such memorandum, if more than one writing is involved.

An agency to sell land and to execute a sufficient memorandum of the contract may be created by parol; and oral evidence may be admissible to resolve ambiguities in the terms of a writing or in the language of reference to other writings sought to be identified as the ones to which the signed writing refers.

Argued January 25th—decided February 3d, 1910.

SUIT for the cancellation of certain deeds of real estate, for the specific performance of an agreement for the sale of the land, and for damages, brought to and tried by the Superior Court in New Haven County, *Curtis, J.*, upon a demurrer to the complaint by two of the defendants; demurrer sustained, judgment rendered in favor of those defendants, and an appeal by the plaintiffs. *No error.*

The defendants are W. J. Hendricks, Jr., individually and as executor and trustee of the estate of his late wife, Lina M. Phipps as trustee, Arlena M. Williams, Mr. and Mrs. H. T. Kelsay (the former as the husband of the latter), W. W. Hawkes, and J. Birney Tuttle, individually and as administrator *c. t. a.* of the estate of Mrs. Hendricks. The complaint alleges that in September, 1908, the defendants, except the last two named, acting through their agent, one Lewis, entered into an agreement with the plaintiffs, subject to their approval and subsequently approved by them, whereby they undertook to convey to the plaintiffs, within a reasonable time, certain described real estate in New Haven, known as Nos. 27 and 29 High Street, of which they were the legal and equitable owners, in consideration of the assumption by the latter of an existing mortgage thereon of $6,000, a cash payment by them of $2,000, of which $200 was to be and was paid down, and the

giving back of a second mortgage upon the property
of $1,000; that the plaintiffs have ever since been ready
and willing to carry out said agreement and perform
their part of it, and have made demand that the con-
veyance be made to them as agreed; and that the de-
fendants have neglected and refused to make such
conveyance.   It is further alleged that the defendants
Hendricks, Mr. and Mrs. Kelsay, and Miss Williams,
in violation of their said agreement, have conveyed
their several interests in said premises to the defendant
Hawkes; that Mrs. Hendricks at the time of her decease
was a resident of Brooklyn, in the State of New York;
that she left as her only heir at law and next of kin a
daughter; that she left a will which named her said
husband as executor and trustee; that Mrs. Hendricks
was the owner of an undivided one fourth of said prop-
erty; that, in order to enable a conveyance of her said
interest to be made, application was made to the Court
of Probate in New Haven that a copy of her will might
be filed and recorded in said court and letters testa-
mentary be granted to the executor named therein;
that the defendants Hawkes and Tuttle thereupon, and
having full knowledge of the agreement with the plain-
tiffs, in co-operation with others of the defendants to
the plaintiffs unknown, conspired and undertook to
prevent the conveyance of the property to the plain-
tiffs; that in pursuance of such undertaking and con-
spiracy, and to the end that the property might be
conveyed to the defendant Hawkes, they obtained from
the Court of Probate the appointment of Tuttle as ad-
ministrator *c. t. a.* of Mrs. Hendricks' estate and trustee
under her will, and authority to him to sell the interest
of her estate in the property; that, in further pursuit
of said undertaking, these defendants sought to induce
the remainder of them not to convey the property to
the plaintiffs, and that thereafter Tuttle, as adminis-

trator as aforesaid, Mr. Hendricks, Mr. and Mrs. Kelsay, and Miss Williams, conveyed their several interests to the defendant Hawkes, who still retains them, so that the legal title to the premises is now in him and Miss Phipps. It is further averred that the premises are centrally located in the city of New Haven, are convenient to the plaintiffs' business, and were purchased by them for the purposes of residence.

Upon the motion of the defendants, the court passed an order that the plaintiffs should file a copy of all the writings relied upon by them to establish the agreement set up in the complaint. This order was complied with by the filing of two receipts for the money paid down, an unsigned memorandum made by Lewis purporting to express the result of his negotiations with the plaintiffs, and sundry letters which passed between Lewis and his principals before and after his negotiations with the plaintiffs were concluded and the unsigned memorandum made. The memorandum, after stating the terms of sale, concludes: "This agreement to be subject to the approval of the heirs of the Estate of Dorothy Williams." It is not questioned that the persons intended by this description were the alleged owners of the property—Lewis' principals. Simultaneously with the filing of these papers the plaintiffs amended their complaint by alleging that Lewis, after the preparation of said memorandum, submitted it to the persons whose approval thereof was required, and that such approval was given in writing, as appeared from the copies of writings filed.

The defendants Hawkes and Tuttle demurred to the complaint, urging, among other things, that it was insufficient, in that it disclosed the lack of an enforcible agreement within the requirements of the statute of frauds.

*Richard H. Tyner*, with whom was *Earnest C. Simpson*, for the appellants (plaintiffs).

*J. Birney Tuttle*, for the appellees (defendants).

PRENTICE, J.   The plaintiffs are seeking to enforce a contract for the sale and conveyance of real estate. Pursuant to an order of court, they have spread upon the record, as a part of their complaint, all the writings upon which they claim to rely in establishing the existence of a memorandum in writing, evidencing the contract sought to be enforced, such as will satisfy the requirements of the statute of frauds.   For the purposes of the demurrer, which has been filed by two of the defendants, the demurrants are entitled to the assumption that there are no other writings which would help to establish the existence of such a memorandum.   The possibility of the existence of certain parol proof supplementing the writings filed cannot, however, be ignored.   For example, an agency carrying with it the power to execute a sufficient written memorandum may be created by parol.   *O'Sullivan* v. *Overton*, 56 Conn. 102, 105, 14 Atl. 300; *Moody* v. *Smith*, 70 N. Y. 598; *Long* v. *Hartwell*, 34 N. J. L. 116; *Cave* v. *Mackenzie*, 37 L. T. (N. S.) 218.   So, also, ambiguities in the terms of a writing, or in the language of reference to other writings sought to be indentified as those to which a signed writing refers, may be resolved by oral proof. Benjamin on Sales (7th Ed.) §§ 222, 222a.   In order, therefore, that the action of the court below may be justified for reasons arising from the statute of frauds, it must appear from the complaint and the writings filed, regarding them as including all pertinent writings, that the plaintiffs could not offer admissible evidence to establish the existence of the necessary memorandum, either by virtue of some one of said writings or of all of

them taken together, or of any one or all of them when supplemented by such parol proof as the law would permit to be received. *Nichols* v. *Johnson,* 10 Conn. 192, 198; *Woodruff* v. *Butler,* 75 id. 679, 681, 55 Atl. 167; *Devine* v. *Warner,* 76 Conn. 229, 232, 56 Atl. 562.

It is alleged that the agreement of sale was made on behalf of the owners by an agent, who, it is averred, gave to the plaintiffs an unsigned memorandum of the terms of sale, which for the purposes of the case it may be assumed was sufficiently comprehensive and certain in its statement and description of the parties, the subject-matter, and the terms of sale, to have met in these respects the requirements of the statute. It is contended by the plaintiffs that the lack of signature was subsequently supplied by a letter of the agent to one of his principals rehearsing its provisions and enclosing a copy of it for approval. This may also be assumed. An examination of the paper in favor of which these assumptions have been made discloses, however, that the agreement there recorded did not purport to conclude a contract of sale. It is expressly stated that no contract should come into existence until the terms proposed had been submitted to and assented to by the owners. The agent did not attempt to exercise the power to contract. He confined himself to negotiations, and as a result of them received and recorded a proposition to be submitted to his principals, to whom, by the express language of the memorandum he made, was reserved full authority to act thereon at their pleasure. The right to contract was distinctly referred to them. The legal situation, after the agent's memorandum was made, was that an offer of terms had been made by the plaintiffs which was to be submitted to his principals. They were left free to act at their pleasure as to its acceptance. If any contract should result, it would be their contract made by them personally and

not by their agent. It follows, therefore, that the act which alone could bring into being a contract of sale was one the evidence of which, if it was to be legally enforcible, could not rest in parol, but must be attested by some writing. The conditions are not those of a ratification of another's act. What has to be discovered is the only attempted act of contract,—the only act which could have any legal effect as creating an obligation upon the landowners.

The only writings in the case bearing signature which can by any possibility have significance as tending to show an acceptance by the prospective vendors of the proposition submitted to them, are letters which passed between the agent and his principals. The authorities are not altogether uniform as to the legal effect of letters, entries and memoranda not intended for the other party or known to him, but the great weight of authority is to the effect that such writings, if otherwise adequate, may be deemed to constitute a sufficient memorandum under the requirements of the statute, or a part of such memorandum, if more than one writing is involved. *Gibson* v. *Holland,* L. R. 1 C. P. 1; *Peabody* v. *Speyers,* 56 N. Y. 230, 237; *Drury* v. *Young,* 58 Md. 546; *Spangler* v. *Danforth,* 65 Ill. 152.

If we now turn to the letters under the hands of those to whom the proposition was by its terms submitted, we find that all those which can be held to have related to it bear the signature of either Mr. Hendricks or Mrs. Kelsay. There is no such letter from either Miss Williams or Miss Phipps. If it be said that possibly it might be shown that the two who wrote did so not only for themselves but for the others, so that parol evidence might establish an agency which would make the apparent act of the two who wrote the act in legal effect of all, the sufficient answer is that upon the averments of the complaint the approval relied upon was one by·

the principals. There is no allegation of such approval by an agent. Under the pleadings, therefore, the court was entitled to assume that there were no such approvals. Practice Book (1908) p. 244, § 144; *Clark* v. *Wooster*, 79 Conn. 126, 131, 64 Atl. 10. That being so, the plaintiffs' case against the demurrants must fail for their inability to establish by legal proof the contract of sale upon which they rely. The proposition embodied an entire and indivisible undertaking. The consent of all of the owners of the land was necessary to the creation of an enforcible contract. The consent of one of them would not bind him to convey his interest, as it would not bind the plaintiffs to accept the conveyance of such interest. *Snyder* v. *Neefus*, 53 Barb. (N. Y.) 63; *Frazer* v. *Ford*, 2 Head (Tenn.) 464; *Johnson* v. *Brook*, 2 George (Miss.) 17. The demurrants, upon the allegation of full knowledge on their part of the entire situation, stand in precisely the same position as would the other defendants, had there been no conveyance to Hawkes, and in no worse a position. Their demurrer was therefore properly sustained. It is not necessary to notice the reasons of demurrer unrelated to the statute of frauds.

It is assigned as a reason of appeal, that the court erred in ruling that all of the defendants were entitled to judgment, and in rendering judgment in favor of all of them. This assignment results from a misinterpretation of the judgment-file. The only judgment rendered was one in favor of the two demurrants. One in favor of the other defendants, while it may result as a corollary of the conclusions which dictate the judgment for their codefendants, could not properly have been rendered at that stage of the case.

There is no error.

In this opinion the other judges concurred.