## EDNA MOREHOUSE *vs.* EMPLOYERS' LIABILITY ASSURANCE CORPORATION.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued December 5th, 1934—decided February 5th, 1935.

*Cornelius J. Danaher*, with whom was *Samuel E. Hoyt*, for the plaintiff in error.

*Joseph B. Morse, Jr.*, for the defendant in error.

AVERY, J. The Employers' Liability Assurance Corporation issued an automobile liability insurance policy to the Morehouse Brothers Company, a Connecticut corporation doing business in Meriden. The plaintiff in error, Edna Morehouse, brought suit December 6th, 1921, against Morehouse Brothers Company for injuries which she claimed to have received while riding as a passenger in an automobile

owned by that company, and then being operated by her brother, an employee. On March 7th, 1922, after trial a verdict was rendered in her favor in the amount of $12,500 which the court set aside, the basis for its action being that the defendant corporation, organized to buy and sell building materials, was not liable in damages for personal injuries received by the plaintiff while riding at night as a guest in its automobile upon the invitation of its president who had, for the time being, appropriated the car for the pleasure of his own family, because under such conditions neither the president nor the operator of the car, although an employee, was acting within the scope of his employment. The action of the trial court in setting aside this verdict was affirmed on appeal (*Morehouse* v. *Morehouse Brothers Co.,* 99 Conn. 720, 122 Atl. 791).

Thereafter, in 1928, while a new trial of the action was in progress, the plaintiff offered in evidence a minute of the board of directors of the corporation, adopted January 17th, 1924, approving, ratifying and confirming the action of its president in permitting the use of the automobile on the evening of the accident as an incident of the authority possessed and exercised by him before that time. Thereupon counsel for the insurance company, who were defending the action, withdrew from the case on the ground that they then, for the first time, had learned of the minute and that its passage by the board of directors was the result of collusion and fraud, and violated the provisions of the policy relating to coöperation of the assured with the company and against voluntary assumption of liability by the insured. After counsel had withdrawn, the jury returned a verdict of $15,000 in favor of the plaintiff.

On September 18th, 1929, Miss Morehouse instituted an action against the Employers' Liability Assurance Corporation, the insurers, to recover the

face of the policy, alleging that no part of the judgment had ever been paid by the defendant, Morehouse Brothers Company, or by the insurance company. In her complaint, she predicated her right to proceed on the authority of Chapter 331 of the Public Acts of 1919, providing that insurers should be absolutely liable under policies against loss or damage on account of bodily injuries, and that the judgment creditor might sue the insurer directly upon the judgment. In its answer, the defendant, after denying the allegations of the complaint, set up in special defenses the action of the corporation in passing the minute of January 17th, 1924, approving the action of its president in permitting the use of the company's automobile for the pleasure of his own son and daughter, which was alleged to be a voluntary assumption of liability on the part of the defendant, and also alleged a lack of coöperation as required by the terms of the policy and fraud. Thereafter, the plaintiff made a motion for oyer as provided in the rules, Practice Book, 1934, § 124, and a copy of the insurance policy was filed in compliance with the order of the court. A demurrer to these defenses was interposed by the plaintiff and overruled by the court. The plaintiff then filed a reply setting forth that the minute adopted by the board of directors truthfully stated what had been the practice of the corporation prior to and at the time of the accident, which was denied in the rejoinder. Thereafter, by leave of the court, the defendant amended its answer by alleging that Chapter 331 of the Public Acts of 1919 was unconstitutional and void in that it was not approved by the Governor within three days of the final adjournment of the General Assembly in that year. To this amendment, the plaintiff filed a reply alleging that the defendant was estopped from setting up this defense

and had waived the right to base a defense on the unconstitutionality of the statute; and, further, that by the issuance of its policy, Chapter 331 of the Public Acts of 1919 became a part of the contract. These allegations were denied by the defendant in the rejoinder. Thereafter, a judgment was rendered by the Superior Court in which the following issues were found for the defendant: (1) The plaintiff had no right to maintain her action under Chapter 331 of the Public Acts of 1919 because the act was unconstitutional; (2) The plaintiff had no right to maintain her action under the policy because the policy was one of indemnity against loss; (3) Conceding the policy to be one of indemnity against liability, the plaintiff has mistaken her proper remedy. From this judgment, the plaintiff did not appeal, but brought the present writ of error.

We are confronted at the outset by a motion to dismiss, the claim of the defendant being that the errors claimed to have been committed cannot be reviewed upon the record for the reason that they involve a consideration of the policy contract which is claimed to be no part of the record. The remedy by writ of error is not coextensive with that by the process of appeal. *Cary* v. *Phœnix Ins. Co.*, 83 Conn. 690, 697, 78 Atl. 426. It is not intended as "a process for invoking the jurisdiction of this court in cases where the more adequate and equitable process of appeal can be used." *New York, N. H. & H. R. Co.* v. *Hungerford*, 75 Conn. 76, 83, 52 Atl. 487. Only errors which appear upon the record of the Superior Court can properly be considered. *Corbett* v. *Matz*, 72 Conn. 610, 611, 45 Atl. 494. A memorandum of decision is improperly contained in a writ of error; "it is not a . . . finding of facts, nor, unless made so by the court, is it such a part of the official record as to become the

basis of a writ of error." *Cummings* v. *Hartford,* 70 Conn. 115, 123, 38 Atl. 916; *Lippitt* v. *Bidwell,* 87 Conn. 608, 615, 89 Atl. 347. The policy, however, was produced and filed on the order of the court pursuant to a demand for oyer made under the rules. These provide that a copy of a written instrument of which oyer is demanded shall be filed as an exhibit. Practice Book, 1934, § 124. A copy so filed becomes, therefore, a part of the pleading to which it relates; *New Idea Pattern Co.* v. *Whelan,* 75 Conn. 455, 457, 53 Atl. 953; *Jacobson* v. *Hendricks,* 83 Conn. 120, 124, 75 Atl. 85. The party obtaining oyer may demur to the adversary pleading as insufficient on its face. *Morrill's Admx.* v. *Catholic Order of Foresters,* 79 Vt. 479, 65 Atl. 526, 527; *Western Springs* v. *Collins,* 98 Fed. 933, 934; *Earle* v. *Fidelity and Deposit Co.,* 68 Atl. (N. J.) 1078; *Waterhouse* v. *Sterchi Bros. Furniture Co.,* 139 Tenn. 117, 201 S. W. 150, 151; 49 C. J. 609. The insurance contract, therefore, must be considered as a part of the record and the motion to dismiss is denied.

The question before us upon this writ of error, therefore, is whether upon the record the judgment for the defendant was permissible. *O'Donnell* v. *Sargent & Co.,* 69 Conn. 476, 483, 38 Atl. 216. Upon the pleadings, it appears that Chapter 331 of the Public Acts of 1919 was not signed by the Governor within three days after the adjournment of the Legislature. The act, therefore, was void. *State* v. *McCook,* 109 Conn. 621, 649, 147 Atl. 126; *Preveslin* v. *Derby & Ansonia Developing Co.,* 112 Conn. 129, 133, 141, 151 Atl. 518; *Siller* v. *Siller,* 112 Conn. 145, 148, 151 Atl. 524. It did not become a law until validated in 1929, long after the accident in this case occurred. The claim of the plaintiff that the defendant by its conduct had waived its right to assert the unconstitutionality of this law or was estopped to do so cannot be upheld. As far as

appears, the defendant was under no obligation to assert the unconstitutionality of this statute until a suit was brought against it based thereon, nor is it alleged that any benefit was invoked or accepted by the defendant which would preclude it from attacking the constitutionality of the statute. The principles which are decisive of cases such as *Holley* v. *Sunderland,* 110 Conn. 80, 86, 147 Atl. 300; *Rindge* v. *Holbrook,* 111 Conn. 72, 75, 77, 149 Atl. 231; and *Coombs* v. *Larson,* 112 Conn. 237, 246, 152 Atl. 297, have no application to the situation alleged in this case.

Whatever rights the plaintiff may have against this defendant are to be found in the construction of the policy itself, the pertinent provisions of which are appended in the footnote.

"INSURANCE PROVIDED. Agreement I. To pay any loss by reason of the liability imposed by law upon the Assured for damages on account of bodily injuries including death at any time resulting therefrom; accidentally sustained during the policy period by any person or persons, other than employees engaged in operating or caring for the automobiles covered, as the result of the ownership, maintenance or use of any of the automobiles enumerated and described in Item 8 of the Declarations.

"Agreement II. To pay any loss by reason of the liability imposed by law upon the Assured for damages on account of injury to, or destruction of property of any description * * *

"DEFINITION OF ASSURED. Condition A. The Assured, wherever referred to in this policy, shall include the Assured named in the Declarations and any person or persons while riding in or operating any of the automobiles enumerated and described in Item 8 of the Declarations for private or pleasure purposes or for making business calls, excluding commercial delivery, with the permission of the said named Assured or with the permission of any adult member of said named Assured's household who is not a chauffeur or a domestic servant.

"LIMITATION OF LIABILITY. (2) In addition to the limits expressed in Item 9 of the Declarations the Corporation will pay all expenses resulting from claims upon the Assured on account of loss as aforesaid, and all costs taxed against the Assured, together with interest thereon, in any legal proceedings defended by the Corporation according to the agreements and conditions of this Policy, and all

Liability insurance policies have given rise to much litigation largely because of the different language used

interest accruing after entry of judgment to date of satisfaction thereof, upon such part of said judgment as is not in excess of the limits of the Corporation's liability as expressed in Item 9 of the Declarations, but the Assured shall not voluntarily assume any liability nor shall the Assured without the written consent of the Corporation previously given incur any expense or settle any claim except at his own cost or interfere with any negotiation for settlement or any legal proceeding, except that the Assured may provide at the Corporation's expense at the time of the accident such immediate surgical relief as is imperative. Whenever requested by the Corporation, the Assured shall aid in securing information and evidence and the attendance of witnesses and in effecting settlements and in prosecuting appeals.

"DEFENSE. Condition D. If thereafter any suit, even if groundless, is brought against the Assured to enforce a claim for damages on account of an accident covered by this Policy, the Assured shall immediately forward to the Corporation every summons or other process as soon as the same shall have been served on him, and the Corporation will, at its own cost, and subject to the limitations referred to in Condition A hereof defend or at its option, settle such suit in the name and on behalf of the Assured.

"INSOLVENCY AND BANKRUPTCY. Assignment. Condition E. (1) The insolvency or bankruptcy of the Assured shall not relieve the Corporation from the payment of damages for injuries sustained or loss occasioned during the policy period. In case of such insolvency or bankruptcy an action may be maintained by the claimant against the Corporation, subject to the terms of this Policy, for an amount not exceeding the amount of this Policy.

"SPECIAL STATUTES. Condition K. If any of the terms or conditions of this Policy conflict with the law of any State within which coverage is granted, such conflicting terms and conditions shall be inoperative in such State in so far as they are in conflict with such law. Any specific statutory provision in force in any State within which coverage is granted shall supersede any condition of this Policy inconsistent therewith."

And by indorsement, the following additional pertinent provisions among others were set forth:

"Condition A: This Policy covers the Assured named in the Declarations, and also covers while any of the automobiles enumerated and described in Item 8 of the Declarations are being used for private purposes, with the express or implied consent of the Owner named in the Policy, or by members of his family, a chauffeur or any other person with the permission of the Owner for 'private pur-

in different policies. They have been broadly classified as those of "indemnity against loss" and those "against liability," the difference being that recovery cannot be had under the former until the liability is discharged, while under the latter the cause of action is complete when a liability attaches. Policies providing that the insurer would "indemnify against liability" or would "pay to the insured all damages with which he may be legally charged" have been classified as policies against liability. *American Employers' Liability Ins. Co.* v. *Fordyce,* 62 Ark. 562, 568, 36 S. W. 1051; *Fenton* v. *Fidelity & Casualty Co.,* 36 Ore. 283, 288, 56 Pac. 1096; *Pickett* v. *Fidelity & Casualty Co.,* 60 S. C. 477, 487, 38 S. E. 160. Policies containing a "no action" clause, providing that "no action shall lie unless for loss actually sustained and paid in satisfaction of a final judgment" have been

poses' as above defined, and any insurance granted by the Policy shall, in addition to the said named Assured, inure to the benefit of any person riding in any of the said Automobiles as well as to the benefit of any person, firm or corporation responsible for the operation of any of the said Automobiles.

"In addition to the limits expressed in Item 9 of the Declarations the Corporation will pay all expenses resulting from claims upon the Assured on account of loss as aforesaid, and all costs taxed against the Assured, together with interest thereon, in any legal proceedings defended by the Corporation according to the agreements and conditions of this Policy, and all interest accruing after entry of judgment to date of satisfaction thereof, upon such part of said judgment as is not in excess of the limits of the Corporation's liability as expressed in Item 9 of the Declarations, but the Assured shall not voluntarily assume any liability nor shall the Assured without the written consent of the Corporation previously given incur any expense or settle any claim except at his own cost or interfere with any negotiation for settlement or any legal proceeding, except that the Assured may provide at the Corporation's expense at the time of the accident such immediate surgical relief as is imperative. Whenever requested by the Corporation, the Assured shall aid in securing information and evidence and the attendance of witnesses and in effecting settlements and in prosecuting appeals."

classified as policies of indemnity against loss. *Shea* v. *United States Fidelity & Guaranty Co.*, 98 Conn. 447, 452, 120 Atl. 286, and cases cited; *Connolly* v. *Bolster*, 187 Mass. 266, 270, 72 N. E. 981; *Eberlein* v. *Fidelity & Deposit Co.*, 164 Wis. 242, 246, 159 N. W. 553; *Herbo-Phosa Co.* v. *Philadelphia Casualty Co.*, 34 R. I. 567, 577, 84 Atl. 1093; *Allen* v. *Aetna Life Ins. Co.*, 145 Fed. 881, 885.

The policy before us in *Shea* v. *United States Fidelity & Guaranty Co.*, supra, was, except for the inclusion of the "no action" clause, almost identical in language with the policy involved in this action. In the instant case, the agreement of the insurer is "to pay any loss by reason of the liability imposed by law upon the assured for damages on account of bodily injuries including death at any time resulting therefrom," and "to pay any loss by reason of the liability imposed by law upon the assured for damages on account of injuries to or destruction of property of any description." The language of the agreement in the *Shea* case was "to indemnify the assured against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death suffered by any person as a result of an accident occurring while the policy is in force," etc. The decision in the *Shea* case is conclusive that the policy in the instant case is one "to indemnify against loss" unless the fact of the omission of the "no action" clause is sufficient to base a distinction. The absence of a "no action" clause does not necessarily classify the policy as one against liability rather than one of indemnity against loss. The effect of the contract is to be determined by consideration of all its terms. *London & Lancashire Indemnity Co.* v. *Cosgriff*, 144 Md. 660, 670, 125 Atl. 529; *Kingan & Co., Ltd.* v. *Maryland Casualty Co.*, 65 Ind. App. 301, 115 N. E. 348, 353; *New York Indemnity Co.*

v. *Ewen*, 221 Ky. 114, 298 S. W. 182, 185; *Degnan* v. *Rhode Island Mutual Liability Ins. Co.*, 51 R. I. 366, 154 Atl. 912, 913; *United States Fidelity & Guaranty Co.* v. *Williams*, 148 Md. 289, 129 Atl. 660, 665. In the instant case, Condition E of the contract provides for an action by the claimant against the insurer in case of the insolvency or bankruptcy of the assured. By inserting this provision in the contract, it is clear that no right of action was provided against the insurer except in the case named, otherwise the provision would be without meaning.

The rule is well settled, as claimed by the appellant, that in the construction of insurance contracts, when a policy is so framed as to leave room for two constructions, the words used should be interpreted most strongly against the insurer; *Rinaldi* v. *Prudential Ins. Co.*, 118 Conn. 419, 423, 172 Atl. 777; *Fricke* v. *United States Indemnity Society*, 78 Conn. 188, 192, 61 Atl. 431; *Dresser* v. *Hartford Life Ins. Co.*, 80 Conn. 681, 710, 70 Atl. 39; *Tomasetti* v. *Maryland Casualty Co.*, 117 Conn. 505, 507, 169 Atl. 54; *Standard Fur Cutting Co.* v. *Caledonian Ins. Co.*, 113 Conn. 108, 113, 154 Atl. 153; *Miller Brothers Construction Co.* v. *Maryland Casualty Co.*, 113 Conn. 504, 513, 155 Atl. 709; but the language employed in the present case is definite and not reasonably susceptible of more than one construction. It is "to pay any loss by reason of liability imposed by law." As no claim is made that the assured, Morehouse Brothers Company, has ever actually paid the judgment secured by the plaintiff, or is insolvent or bankrupt, no loss is alleged which would give any right of action to the assured under the policy and, therefore, no right of action exists in behalf of the present plaintiff.

The appellant claims that even though Chapter 331 of the Public Acts of 1919 was unconstitutional, yet it

was, by the terms of the policy (Condition K) made a part of the contract. The statute is not referred to in terms in Condition K. That clause is general and provides, in substance, that if any terms of the policy conflict with any law of the State, such conflicting terms shall be inoperative in that State in so far as they are in conflict, and that any specific statutory provision of any State within which coverage is granted shall supersede any condition of the policy inconsistent therewith. Such a general provision does not make any statutory provision a part of the policy except so far as there may exist a valid statute inconsistent with the terms of the policy. In *State* v. *McCook,* 109 Conn. 621, 649, 147 Atl. 126; *Preveslin* v. *Derby & Ansonia Developing Co.,* 112 Conn. 129, 133, 141, 151 Atl. 518; and *Siller* v. *Siller,* 112 Conn. 145, 148, 151 Atl. 524, we held that a law not signed by the Governor within the time prescribed by the Constitution was void and not voidable. A void statutory provision could not be held to be incorporated into the insurance company's contracts by such a general provision as that set forth in Condition K.

The third and final matter determined by the judgment of the trial court was that the plaintiff had mistaken her proper remedy, conceding the policy to be one for indemnity against liability. The contract itself does not purport to give to the party injured any right of action against the insurance company except in the special case of bankruptcy or insolvency of the assured, which are not alleged to have existed in this case. If the plaintiff had any right of action, therefore, it would be necessary for her to proceed as indicated in *Shea* v. *United States Fidelity & Guaranty Co.,* 98 Conn. 447, 452, 120 Atl. 286, where we said: "Where garnishee process of attachment is available, that method and not a claim of a right in equity is

the method by which an injured person should attempt to secure whatever sum may be due the assured under the policy." The case of *Dickinson* v. *Maryland Casualty Co.*, 101 Conn. 369, 372, 125 Atl. 866, relied upon by the appellant, is not in point, as in that case the policy contract by its terms gave to the party injured a right of action against the company to enforce any judgment obtained against the party insured. No such provision appears in the policy in the instant case.

There is no error.

In this opinion the other judges concurred.