[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT LIBERTY AUTO ELECTRIC COMPANY'S MOTION FOR SUMMARY JUDGMENT (#141)
This litigation arises out of the installation by defendant Liberty Auto Electric Company, Inc. (Liberty) of five new underground gasoline storage tanks on premises owned by the plaintiff Amoco Oil Company (Amoco).
Amoco purchased the gasoline storage tanks from Buffalo Tank Corporation of Baltimore, Maryland (Buffalo). Buffalo arranged for the delivery of the tanks to the installation site located at 1510 East State CT Page 6544 Street, Westport, Connecticut. Liberty was not involved in the sale or delivery of the tanks to the site. Liberty contracted with Amoco concerning the excavation and installation of the new underground gasoline tanks, as well as various equipment and systems associated with them; including submersible pumps, overfill systems, discharge lines, vents, fill lines, cathodic protection and a cement mat over the tanks. The tanks and related equipment were installed by Liberty in 1987 and 1988.
In September of 1994, Amoco discovered a leak in one of the tanks. That tank was removed and replaced on November 29, 1994. Amoco alleges that Liberty, as the installer of the leaking tank, is responsible for the damage to its property and for unspecified costs and expenses relating to the repair, remediation and clean-up of the site.
Amoco's complaint includes contract claims under counts one and three, a negligence claim under count two, and a product liability claim under count four. Liberty answered and pleaded by way of special defenses that the contract and negligence claims were barred by applicable statutes of limitations. See #117.[1] Liberty now moves for summary judgment on all four counts of the complaint on the basis that the contract claims asserted in counts one and three are barred by the General Statutes § 52-576 (a) limitation period; the negligence claim is barred by the General Statutes § 52-584 limitation period; and the product liability claim must fail because Liberty is not a "product seller" as contemplated by the Connecticut Product Liability Act, General Statutes § 52-572n. Amoco has opposed the motion for summary judgment. See #142.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law; . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . ." (Citations omitted). Appleton v. Board ofEducation, 254 Conn. 205, 209 (2000). "A material fact is a fact that will make a difference in the result of the case. . . ." The facts at issue are those alleged in the pleadings. (Citations omitted; internal quotation marks omitted.) Mountaindale Condominium Assn. v. Zappone, CT Page 654559 Conn. App. 311, 315 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500 (1988). "Summary judgment may be granted where the claim is barred by the statute of limitations." See Daily v. New BritainMachine Co., 200 Conn. 562, 566-70 (1986)
With respect to its motion for summary judgment on counts one and three, Liberty relies on General Statutes § 52-576 (a), which provides in pertinent part that "[n]o action on any contract in writing shall be brought but within six years after the right of action accrues. . . ." Id. "In an action for breach of contract, the cause of action is complete upon the occurrence of the breach, that is, when the injury has been inflicted. . . ." (Citations omitted; internal quotation marks omitted.) McNeil v. Riccio,45 Conn. App. 466, 473 (1997). "While the statute of limitations normally begins to run immediately upon the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having occurred. The true test is to establish the time when the plaintiff first could have successfully maintained the action." (Citation omitted; internal quotation marks omitted.) Engelman v. Connecticut General Life Ins. Co., 240 Conn. 287,294 n. 7 (1997). "In an action for breach of contract . . . the cause of action is complete at the time the breach occurs, that is, when the injury has been inflicted." Kennedy v. Johns-Manville Sales Corporation,135 Conn. 176, 180 (1948). A right of action accrues under § 52-576
(a) upon completion of the services rendered. Id. Our Supreme Court also held in Kennedy v. Johns-Manville Sales Corporation, supra,135 Conn. 179, that "[i]t is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action." The same rule was applied in Beckenstein v. Potter Carrier, Inc., 191 Conn. 150, 156 (1983) (claim of defective roof installation barred by General Statutes § 52-576)
In its memorandum opposing the motion for summary judgment at page 12, Amoco argues that "[where there is something tantamount to fraudulent concealment, the running of the statute of limitations is tolled." Review of the pleadings reveals that Amoco did not affirmatively plead General Statutes § 52-595 in response to Liberty's special defenses, which alleged that Amoco's claims were barred by the applicable statutes of limitation. It was decided in Beckenstein v. Potter Carrier, Inc., supra, 191 Conn. 163, that "[i]n order to raise a claim of fraudulent concealment, the party challenging a statute of limitations defense must affirmatively plead it. . . . In the present case, the reply filed by the plaintiffs contained a general denial of the defense. This was CT Page 6546 insufficient."
(Citations omitted.) Id. Likewise, the pleadings are insufficient to sustain such a § 52-595 tolling claim in this case.
Moreover, Amoco has not provided factual support for its fraudulent concealment argument. General Statutes § 52-595 provides that "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." In order to prove fraudulent concealment, a plaintiff must show:
"(1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiff's cause of action; (2) the defendant's intentional concealment of these facts from the plaintiff; and (3) the defendant's concealment of the facts for the purpose of obtaining delay on the plaintiff's part in filing a complaint on [its] cause of action." Bartone v. Robert L. Day Co., 232 Conn. 527, 533
(1995). None of these three criteria has been alleged in a pleading or factually supported in Amoco's opposition papers.
Bartone involved the allegedly negligent installation of a septic system as part of a newly constructed home, and whether otherwise applicable statutes of limitation were superceded by the fraudulent concealment of the existence of the homeowner's cause of action. The plaintiff in Bartone argued that "because a septic system is buried in the course of the construction, any defects arising out of its negligent construction or out of its failure to correspond with representations about its reliability are necessarily concealed by those who have any responsibility, direct or indirect, for its construction." Id. The court in Bartone specifically rejected this argument, holding that a plaintiff could not prevail on a claim of fraudulent concealment absent a showing that the defendant's actions were "motivated by an intent to conceal from the plaintiffs the existence of a cause of action in order to delay their filing suit." Id., 534.
Amoco included in its opposition papers an assertion by its affiant, William Maseth, Jr., that Liberty "appears to have intentionally or negligently concealed the existence of this [defective] condition from Amoco." This speculative statement fails to present any facts to support the existence of a genuine issue of material fact concerning fraudulent concealment. "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence CT Page 6547 disclosing the existence of such an issue.
It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact. . . ." (Citations omitted; internal quotation marks omitted.) Home InsuranceCo. v. Aetna Life Casualty Co., 235 Conn. 185, 202 (1995)
Amoco also argues that the statute of limitation may be tolled by negligent concealment. No legal authority provides for the tolling of a statute of limitations based on negligent concealment. The theory of negligent concealment specifically obviates the elements of intent necessary to satisfy the tolling provision set forth in General Statutes § 52-595.
Amoco then contends that Liberty's reliance on the General Statutes § 52-576 (a) is misplaced. Count one of Amoco's complaint is based on a claim for a contractual indemnification. Liberty asserts that count one is a contract claim and, therefore, is barred by the § 52-576 (a) limitation period for contract claims. Amoco contends that General Statutes § 52-598 (a), specifically dealing with actions for indemnification, is the applicable statute of limitations.
Section 52-598 (a) provides in pertinent part that "[n]otwithstanding any provision of this chapter, an action for indemnification may be brought within three years from the date of the determination of the action against the party which is seeking indemnification by either judgment or settlement." In this case, Amoco seeks indemnification against losses sustained due to Liberty's allegedly improper installation of the storage tank. Our case law makes it clear, however, that when an indemnity is against loss, the loss must actually occur and be ascertainable before the indemnitee can maintain the action. 24 LeggettStreet Limited Parts v. Beacon Industries, 239 Conn. 284, 306 (1996). "Generally, indemnity agreements fall broadly into two classes, those where the contract is to indemnify against liability and those where it is to indemnify against loss. In the first, the cause of action arises as soon as liability is incurred, but in the second it does not arise until the indemnitee has actually incurred the loss. . . . Where an indemnity agreement, however, indemnifies against liability as well as against loss . . . the indemnitee does not have to wait until the loss occurs, but may sue on the agreement as soon as liability is incurred. 41 Am.Jur.2d, Indemnity § 29. (Citations omitted.) Balboa Insurance Co. v.Zaleski, 12 Conn. App. 529, cert denied, 206 Conn. 802 (1987); seeFairfield v. D'Addario, 149 Conn. 358, 361 (1962) (finding agreement to constitute indemnity against liability, under which obligation to defend arose when action was brought); Calamita v. DePonte, 122 Conn. 20, 23-24
CT Page 6548 (1936) (ordering new trial where trial court disregarded distinction between indemnity against liability and indemnity against loss);Morehouse v. Employers' Liability Assurance Corp., 119 Conn. 416, 423-25
(1935) (construing no action' clause in liability insurance policy to constitute indemnity against loss, not liability)." (Internal quotation marks omitted.) Id.
Amoco appended a copy of the subject contract to its opposition papers. The indemnification clause is found at paragraph 4. With respect to property claims only, the contract provides that indemnity is "against any and all loss." In that event, "[s]ection 52-598 expressly provides that a cause of action for indemnity does not arise until the determination of the underlying action against the party seeking indemnification." Sivilla v. Philips Medical Systems of N. Am., Inc.,46 Conn. App. 699, 711 (1997)
There is no dispute that lawsuits filed against Amoco by parties seeking damages arising out of leakage from the subject tank have not been settled or reduced to judgment. See Memorandum of Law in Opposition to Motion for Summary Judgment, p. 7. Thus, the statute of limitations for an indemnification claim in this case does not yet apply. The limitation period applicable to the contract claims in counts one and three is the six-year provision of General Statutes § 52-576 (a). That limitation period bars Amoco's contract claims in this case, which were first asserted more than seven years after the alleged improper installation.
The second count of Amoco's complaint is a negligence claim, which Liberty contends is barred by General Statutes § 52-584, providing in pertinent part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence. . . . shall be brought but within two years from the date when the injury is first sustained or discovered, or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . ." Liberty notes that the alleged improper installation occurred in 1988, and this litigation was initiated in 1996. Amoco argues that it seeks indemnification for damage caused by Liberty's negligence and, therefore, the § 52-598 (a) limitation of action for indemnifications applies.
Amoco's negligence claim would clearly be barred by application of § 52-584. "The relevant date of the act or omission complained of, as that phrase is used in § 52-584, is the date when the negligent conduct of the defendant occurs and not the date when the plaintiff first sustains damage." (Internal quotation marks omitted). Sherwood v. DanburyCT Page 6549Hospital, 252 Conn. 193, 203 (2000), quoting Blanchette v. Barrett,229 Conn. 256, 265 (1994). The statute of limitation for Amoco's negligence action began to run on the date Liberty installed the tank, which was sometime in 1987 or 1988. The action was not filed until 1996, long after the statute of limitation set forth in § 52-584 had expired.
Amoco argues that count two is an action for indemnification based on negligence. Inasmuch as the claims against Amoco relating to the installation have not been determined by either judgment or settlement, § 52-598 (a) does not apply. Count two of Amoco's complaint is barred by application of the General Statutes § 52-584 limitation period.
The fourth count of the complaint is asserted under Connecticut's Product Liability Act, General Statutes § 52-572 (m) et. seq. Liberty moves for summary judgment on this claim on the basis that Liberty is not a "product seller" under the product liability act. Whether a defendant is a product seller for purposes of the product liability statute is a matter of law for the court to determine. See Burkert v. Petrol Plus ofNaugatuck, Inc., 216 Conn. 65, 72 (1990); see also Hines v. JMJConstruction, Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 506329 (January 11, 1993, Miano, J.)
Amoco relies on the provision of the product liability act §52-572m (b), which provides: "`Product liability claim' includes all claims or actions brought for . . . property damage caused by . . . preparation, assembly, installation, testing of any product." However, a product liability claim pursuant to § 52-572n (a) may only be asserted against "product sellers." See Ferguson v. EBI Medical Systems, Superior Court judicial district of New London, Docket No. 527663 (August 1, 1995, Hurley, J.)
General Statutes § 52-572m (a) defines "product seller" as any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term `product seller' also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products." There is no evidence that Liberty was involved in the business of selling or leasing underground gasoline storage tanks. Liberty did not place the product in the stream of commerce. The product was sold to Amoco by a third party (Buffalo), which third party delivered it to the installation site. Our Appellate Court in Paul v. McPhee Electrical Contractors,46 Conn. App. 18, 23 (1997), held that an installer of a light fixture was not a "product seller" because it was not alleged that the installer was in the business of selling or leasing light fixtures, or was engaged in the bailment of such light fixtures or was involved in placing such CT Page 6550 light fixtures in the stream of commerce. In addressing the purpose of the product liability act and its construction, our Appellate Court in Rodiav. Tesco Corp., 11 Conn. App. 391, 396 (1987), held: "A principal purpose of the product liability statute is to protect people from harm caused by defective and hazardous products. In order to meet this purpose, it is necessary that the statute be read to reach all conduct which affects the safety of a product prior to its entry into the stream of commerce." Amoco purchased the tank in question from Buffalo, which delivered the product to Amoco before Liberty installed it. There is no allegation that Liberty was in the business of selling or leasing tanks or engaged in the bailment of such tanks.
Amoco argues that Liberty was a key party in the placement of the gasoline tank into the stream of commerce, where it was used by Amoco and its dealer for the storage of gasoline for the ultimate delivery of fuel to the motoring public. Memorandum in Opposition to Motion for Summary Judgment, p. 14. It does not follow that the installation of the tank after it has been sold and delivered by another party qualifies as "placing the product in the stream of commerce." The product was in its ultimate destination when Liberty acted upon it; Liberty's work under the contract was performed only after the tank was sold and delivered to Amoco. These facts are unlike the scenario in Rodia v. Teso Corp., supra, where the defendant-lessor was held to be a product seller because it acted upon the product before it was leased. Summary judgment enters for Liberty on the fourth count of the complaint asserted under the product liability statute, because Liberty was not a "product seller" under the act.
 CONCLUSION
Summary judgment enters for Liberty on 11 four counts of the complaint.
 ________________________ ROBERT P. McWEENY, JUDGE