LUTHER MONSON *vs.* E. GROVE LAWRENCE AND OTHERS.

M, who was a stockholder in a manufacturing corporation, with L, another stockholder, endorsed sundry notes of the company, upon the other stockholders executing a bond to them to save them harmless from all loss upon the liability thus assumed, of which loss they, M and L, were to bear a share in proportion to the stock held by them. The company afterwards failed, leaving several notes outstanding which had been indorsed by M and L. M conveyed away certain real estate which he owned, and removed from the state, and had never paid any thing on the notes so indorsed. L and the other stockholders procured suits to be brought on the notes, and the real estate conveyed away by M to be attached on the suits, their object being to compel him to contribute his pro rata share of whatever loss he was holden to share with them, and they having paid sundry debts of the company on which they were severally holden as sureties. M then brought a bill in equity against L and the obligors of the bond, praying for an account of the loss, a disclosure, and an injunction against the suits, and alleging that some of the notes had been in fact paid and were put in suit in bad faith by the respondents. Held, in dismissing the bill—1. That so far as the bond was concerned, the plaintiff had no cause of complaint, since it was only a bond of indemnity, and he had not been damnified, having paid nothing on his liabilities for the company. 2. That if he had been damnified, he would have had ample remedy at law by a suit on the bond, in which suit an account of the loss could be taken as well as in the present suit. 3. That if the notes were paid, the plaintiff had a good defense to the suits upon them, of which he could avail himself at law, and if not paid, the holders had a right to sue and recover upon them. 4. That, as the plaintiff was in any event to bear a portion of the loss on the liabilities so incurred by him for the company, it was not inequitable that the respondents should resort to such a mode of compelling him to pay such portion of the loss.

BILL in equity. The plaintiff averred that in July, 1851, the Union Woolen Mills, a corporation located at Canaan,

in Litchfield County, of which the plaintiff was a stockholder, was in need of aid to enable it to carry on its business, and applied to the plaintiff then residing in said Canaan, and to Lawrence one of the defendants, who was also a stockholder, to assist them with their credit, by indorsing the paper of the company—and that to secure them in so doing the other stockholders gave them a bond of indemnity, dated the 7th day of July, 1851, signed and sealed by them severally, by which they bound themselves individually to the plaintiff and Lawrence, or either of them, to indemnify and save them and each of them harmless from all loss by reason of the liabilities thus to be assumed by them for the company, each stockholder contributing according to his share of the stock of the company, and the plaintiff and Lawrence bearing each a share of such loss, according to the amount of the stock held by them respectively. The bill then alleged that the plaintiff and Lawrence, under the arrangement thus made, had indorsed sundry notes and accepted sundry drafts of the company, which had never been paid, and which the company would never be able to pay, having gone into insolvency and having assets sufficient to pay but a small part of its debts,—and that Lawrence had instigated the holders of these notes and drafts to bring suits thereon and attach property claimed by them to be the property of the plaintiff, while no property either of the corporation or of Lawrence had been attached, though the latter had a large amount of property within the state, and that the obligors of the bond had combined with Lawrence, and the trustees in insolvency of the company, to enforce the collection of the notes and drafts against the plaintiff, and in such a manner as to relieve them and Lawrence. The bill also alleged that certain of the notes and drafts so in suit had been in fact paid, but were put in suit, or continued in suit, by Lawrence and the others, for the purpose of compelling the plaintiff to pay them. The bill prayed for an injunction against the prosecution of the suits, an account of all losses to which the parties were bound to contribute, an ascertainment of the share of each party liable to contribute, and a disclosure.

The eupsrior court made a special finding of the facts, from which it appeared that the bond of indemnity described in the bill had been given to the plaintiff and Lawrence as alleged, and that they had assumed liabilities as sureties for the company upon its paper on the security of the bond, and that, at the time of the bringing of the bill, there were outstanding and still remained, of the paper of the company upon which they were liable, a note of $3,000 to one Timothy Chittenden, signed by the company as principal and by the plaintiff, Lawrence, William P. Russell and Fitch Ferris as sureties—the said Russell and Ferris being also stockholders and obligors on the bond of indemnity—one note of $1,000 to Ensign Church, signed by the company as principal and by the plaintiff and Lawrence as sureties—and a draft of the company on the plaintiff, for $1,000, payable to the order of Lawrence and the said Russell, which the plaintiff had accepted for the accommodation of the company, and which had been endorsed by Lawrence and Russell for the accommodation of the company and used for its benefit. There was also a note made by the company, and indorsed by the plaintiff for its accommodation, for $1,750, and passed to one Thompson, which note the said Russell and Ferris had taken up with their own funds, and held the same against the company. The draft had been paid by Lawrence and Russell, the indorsers, and by them put in suit against the plaintiff. The note to Chittenden had been purchased of him by John H. Russell and Frederick Watson, who were the trustees of the assigned estate of the company, they giving their own note in the place of it, and had been put in suit by them against the plaintiff. The Church note had been put in suit for his benefit by the said John H. Russell, and Lawrence had deposited with him a sufficient amount of notes and acceptances to pay it, which he was to retain, but with the understanding that they were not to be applied as payment, so as to affect the suit then pending. The plaintiff claimed that these transactions constituted, in the several cases, payment of the paper. The court found the facts with regard to the several arrangements with much detail,

but the particulars have become unimportant in the result. It was also found that the company had failed, and on the 29th day of March, 1855, had made an assignment in insolvency, for the benefit of its creditors, to the said John H. Russell and Frederick Watson; that all the obligors of the bond of indemnity, of whom there were eight, were insolvent, except the said Russell and Ferris, and William W. Welch; that Lawrence was responsible; that the plaintiff had removed to the state of Massachusetts and was then in the West Indies, and that he had no property in the state, unless the real estate attached in the several suits against him above mentioned was to be so regarded; that this real estate had been conveyed away by the plaintiff previous to the attachment of the same in the suits mentioned, and the title to the same would be contested; that the plaintiff had paid nothing on any of his liabilities as surety for the company; that Lawrence, Russell, Ferris and Welch had severally paid large sums for the company in discharge of debts of the company for which they were liable as sureties; that the plaintiff offered to pay his pro rata share of the notes to Chittenden and Church, and to accept a decree conditioned therefor; that no adjustment of the losses by reason of the liabilities assumed under the provisions of the bond of indemnity had ever been made between the obligors and obligees of the bond; that a dividend of 23 per cent. had been made on the claims proved against the company, which was all that would be paid; and that the notes and draft above described had been presented to and allowed by the commissioners on the estate of the company. Other facts were found, which are not important in the view of the case taken by the court. The parties who were made defendants to the bill were Lawrence, the obligors of the bond, and the trustees of the assigned estate of the company.

The case was reserved, on the facts found, for the advice of this court.

*Granger* and *Warner* for the plaintiff.
The objects sought by the bill are to obtain a discovery,

settle the rights of the parties under the bond, and to obtain an injunction against the further prosecution of the suits at law.

1. Those suits are being prosecuted by the respondents, Russell, Ferris, Lawrence and Welch, in fraud of the rights of the plaintiff; and, if they are not staid, injustice will be done, by compelling him to pay, not to Chittenden and Church, but to themselves, the identical debts which they agreed to indemnify him against. In such a case equity will give relief. *Pearce* v. *Olney,* 20 Conn., 544. 2 Swift Dig., 151, 152.

2. The only legal or equitable claim which the respondents have upon the plaintiff, is based upon the bond of July, 1851. And that bond was given to protect the plaintiff, (and not the obligors,) in case he should be compelled to pay notes or drafts which he might indorse for the Union Woolen Company. If, therefore, the plaintiff had paid such debts or claims, he might, by the terms of the bond, sue the obligors and recover the whole amount, less his pro rata share of the loss, as stipulated in the bond. If he might, after paying these claims, thus recover back the amount paid, the respondents ought not to be allowed to enforce their collection out of him. Chittenden and Church are not to be regarded as prosecuting the suits at law. They have no interest in the matter, and have no real claim against the plaintiff. The suits are brought for the benefit of the respondents ; and the suit on the draft accepted by the plaintiff is brought in bad faith, since he was known to have accepted it only for the accommodation of the company. The only reason which they give for bringing these suits is, that they will in this way compel the plaintiff to come to them for contribution. This is against good conscience and fair dealing, and is a fraud upon his rights, and certainly ought not to find favor in a court of equity. Especially is this so where the plaintiff offers to pay his pro rata share of the notes indorsed by him, and is willing that such payment should be made a condition of the decree. 1 Story, Eq. Jur., §§ 493, 499 *b, and notes.*

3. The rights of all the parties may be settled under this

bill and a multiplicity of suits prevented. This alone is sufficient to sustain the bill. We also ask for a discovery, which is also sufficient for this purpose. 2 Sw. Dig., 159.

4. It is of no importance that the obligors of the bond have paid large sums on the debts of the company for which they were holden, as the plaintiff can not be required to contribute to such loss. The bond of July, 1851, which is the only contract between these parties and the plaintiff on the subject of liabilities to be assumed for the company, makes no provision for any endorsements to be made by any other parties than the plaintiff and Lawrence.

*Woodruff* for the respondents.

1. The petitioner has adequate remedy at law, in a suit on his bond whenever he shall be damnified. That remedy is ample. The obligors are abundantly solvent. There is, therefore, no occasion for coming into a court of equity.

2. The petitioner can not sustain his bill, because he has not yet been damnified. He has paid nothing, and it can not be known that he ever will pay. The condition of the bond has not been broken. This would be a fatal objection to an action at law, and is equally fatal to a bill in equity. The petitioner can not, for fear that he shall be called on to pay, require his indemnifiers to make payment in advance. He can not call for his indemnity until he has been damnified.

3. There would be no propriety in enjoining against the suits. If any of the debts on which the suits are founded are paid, as is claimed, then there is a good defense against the suits brought on these debts. If they are not paid, then the creditors who hold these claims have a right to collect them, and the petitioner ought to pay them. The suits in the names of Church and Chittenden are not the suits of the respondents. Why then should they be enjoined against? It is no legal or equitable objection that they were commenced at our instigation, and as a means of procuring from the plaintiff payment of his share of the liabilities. As to the Chittenden note, it was not paid, but sold to J. H. Rus-

sell and F. Watson. They then, as assignees, had the right to sue it. And it is no matter what their motive was. The suit on the draft is the ordinary suit against an accepter. But if these suits are to be treated as our suits, they are proper, and we should not be enjoined against prosecuting them, because they are legal and proper means of compelling Monson to pay his share of the debts. It appears that we have by attachment secured the payment of these claims. If this injunction is granted our security is gone. The suits can not therefore be discontinued without defeating our just rights.

ELLSWORTH, J. The principal ground upon which this petition is brought, if not the only one, is the bond executed on the 7th day of July, 1851. But this is a mere bond of indemnity. It gives no cause of action until the petitioner is damnified, by being obliged to *pay* some indorsement which he has made for the Union Woolen Company or some of their paper which he has underwritten. This event has not yet happened; no payment has been made, and no damage has been suffered by the petitioner; and hence there is no breach of the bond or cause of action upon it. And if indeed there was, it is not readily to be perceived why a court of equity is resorted to, when a court of law furnishes an adequate remedy by suit on the bond. The state of the account, so far as that is important, can as well be shown in the latter court as in the former. But as it is found and agreed that the petitioner has not paid any thing at all for the company, the state of the account is not now important. There is not, as we conceive, the semblance of a claim on the bond, in any court, either of law or equity.

Then, laying the bond out of the case, is there any thing else in the finding which will sustain the bill? We think there is not; and we are much inclined to believe that the professional gentleman who drew the bill had substantially the same view, for the bill as drawn seems to present that simple aspect.

But if we are in error in this conclusion, and must go far-

ther in our inquiry let us see what are the facts which are found by the court. It seems that there are two notes of hand outstanding, and one draft upon which the petitioner with others is liable, on which he has been sued, and certain property of his been attached. He asks that the court will enjoin against these suits. One of the notes is for $3,000, given to Timothy Chittenden, signed by the company as the principal, and by Lawrence, Bissell, Ferris and the petitioner as sureties. The other parties respondents are, aside from the aforesaid bond, in no way responsible for this note, and, so far as this note is the matter in controversy, should not have been made respondents in the suit. Now, as to the note, it is paid and extinguished, or it is not. If it is paid, the respondent has a good defense in the action at law. If it is not, it is the property of John H. Russell and Frederick Watson, who, having attached property to secure the debt, are proceeding to obtain judgment; and we know not why their efforts should be arrested. The same is true of the note of $1,000 due to Mr. Church. Lawrence and the petitioner are alone sureties here. This note is avowedly unpaid and may therefore well be sued. So as to the draft of $1,000; the petitioner is the accepter, and Lawrence and Russell the indorsers, and apparently, (the bond aside,) the latter are liable only *after* the petitioner. We do not then see any thing in the notes and drafts themselves, or in the matter with which they are connected, that raises an equity in favor of the petitioner against the owners of the notes or draft, or against the respondents as obligors in the bond, or as stockholders in the Union Woolen Company, when, under the charter, there is no personal or individual liability.

Besides, from other facts in the finding, it is apparent that the respondents are largely in advance of the petitioner for moneys paid out on the indorsements of the company's paper; indeed, the petitioner has not paid any thing at all, while most of the others have paid large sums, but on the contrary has left the state without making provision for the payment of any portion of the company's debts, or arrang-

ing with his fellow indorsers or sureties for the sums which have been paid by the respondents as indorsers or sureties.

We advise therefore that the bill be dismissed.

In this opinion the other judges concurred; except Seymour, J., who, having formerly been of counsel in the case, did not sit.

Bill to be dismissed.