## AMOCO OIL COMPANY *v.* LIBERTY AUTO AND ELECTRIC COMPANY
## (SC 16705)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued April 24—officially released December 10, 2002

*Arthur R. Riccio, Jr.*, for the appellant (plaintiff).

*Michael C. Deakin,* with whom, on the brief, was *Peter D. Clark,* for the appellee (defendant).

*Opinion*

ZARELLA, J. The plaintiff, Amoco Oil Company (Amoco), appeals from the judgment of the trial court rendered in favor of the defendant, Liberty Auto and Electric Company (Liberty). The dispositive issue in this appeal is whether the trial court properly concluded that General Statutes § 52-576 (a)[1] barred Amoco's claim for indemnification pursuant to the terms of a contract between Amoco and Liberty. We conclude that the trial court properly determined that Amoco's claim is barred by § 52-576 (a). Accordingly, we affirm the judgment of the trial court.

The record discloses the following undisputed facts and procedural history. In October, 1987, Amoco entered into a contract with Liberty to install five new underground gasoline tanks and equipment associated with the operation of those tanks on certain property owned by Amoco and located in Westport. In addition to provisions governing the scope of the work to be performed under the contract and the terms of payment, the contract contained the following provision: "Liability and Indemnity: Contractor[2] shall be solely responsible for all labor, materials, equipment and work until the Job is accepted by Company.[3] Contractor shall reimburse Company for, and indemnify Company and hold it harmless from and against any and all loss, costs (including reimbursement of all attorney fees and other costs of defense), damage, expense, claims (including claims of strict liability and for fault imposed by stat-

[1] General Statutes § 52-576 (a) provides: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section."

[2] The contract refers to Liberty as the "Contractor."

[3] The contract refers to Amoco as the "Company."

utes, rules or regulations), suits and liability on account of any and all bodily injuries or death to any persons (including the employees of Company, Contractor, or its subcontractors) or damage to, or loss or destruction of any property (including without limitation, the work covered hereunder and the property of Contractor, and subcontractors and Company) arising directly or indirectly out of or in connection with the performance of this Contract whether caused or contributed to by a negligent act or omission of either party, except that Contractor assumes no liability for the negligent acts of Company, its agents, servants or employees, which, without contributory fault on the part of Contractor, its subcontractors or their agents or employees, causes property damage or injury to or death of any person. Company reserves the right to retain sufficient funds to cover this obligation."

Liberty completed its installation of the tanks in March, 1988. In September, 1994, Amoco discovered a leak in one of the tanks that Liberty had installed. Consequently, the tank was removed and replaced in November, 1994. Subsequently, in March, 1996, Amoco filed a four count complaint in which it sought indemnification from Liberty pursuant to the terms of the contract. Amoco also sought damages resulting from Liberty's alleged negligent installation of the tank, breach of contract and violation of the Connecticut Product Liability Act, General Statutes § 52-572m et seq.

Amoco alleged in the first count of its complaint that, upon inspection and examination of the tank after it had been removed, it was determined that Liberty "had improperly, carelessly and negligently installed [the] tank . . . ." Amoco alleged, inter alia, that Liberty had caused damage to the tank upon installation and that it had not properly inspected or tested the tank for leaks thereafter. Amoco further alleged that, as a result of Liberty's carelessness and negligence, Amoco's prop-

erty had sustained damage and that, consequently, Amoco had incurred substantial costs and expenses associated with remediation, including the removal and replacement of the tank and cleanup of its property. On the basis of the foregoing allegations, and in accordance with the terms of the contract, Amoco claimed a right to "indemnification" for the costs and expenses incurred.[4]

Liberty moved for summary judgment on all four counts. The trial court granted Liberty's motion and rendered judgment[5] in favor of Liberty, from which Amoco appealed to the Appellate Court. Pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1, we transferred Amoco's appeal to this court.

Amoco contends that the trial court improperly granted Liberty's motion for summary judgment as to Amoco's indemnification claim, which was set forth in count one of Amoco's complaint. In support of its contention, Amoco raises two issues on appeal. First, Amoco contends that the trial court improperly treated the first count of its complaint as a claim for breach of contract and, therefore, improperly applied § 52-576 (a),[6] the statute of limitations for breach of contract actions, instead of General Statutes § 52-598a,[7] the statute of limitations for indemnification actions, in dis-

---

[4] In the first count of its complaint, Amoco claimed "a right to indemnification in accordance with the terms and provisions of its contract with [Liberty] for all damages, costs and expenses incurred as a result of [the damaged gasoline tank]."

[5] We only address the propriety of the trial court's decision to grant summary judgment in favor of Liberty with respect to Amoco's indemnification claim. Amoco does not challenge on appeal the trial court's decision to grant summary judgment in favor of Liberty on Amoco's claims of negligence, breach of contract and product liability.

[6] See footnote 1 of this opinion.

[7] General Statutes § 52-598a provides: "Notwithstanding any provision of . . . chapter [926 of the General Statutes], an action for indemnification may be brought within three years from the date of the determination of the action against the party which is seeking indemnification by either judgment or settlement."

missing count one of Amoco's complaint. Second, Amoco claims that the trial court improperly construed the indemnity agreement as one that indemnifies against loss but not against liability and, therefore, improperly concluded that § 52-598a did not apply inasmuch as Amoco had not incurred liability pursuant to a judgment or settlement, notwithstanding Amoco's contention that it already had incurred losses and damages.[8] We disagree with both of Amoco's claims.

We first address the standard of review. "Our standard of review of a trial court's granting of summary judgment is well established. Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[8] As to this second issue, we note that the trial court's memorandum of decision refers to two additional third party actions brought against Amoco for property damage arising out of leakage from the tank that Liberty had installed. The two additional third party actions, however, are not relevant to the merits of this appeal. In the first count of Amoco's complaint, Amoco claims a right to indemnification, in accordance with the terms of the contract, for losses resulting from damage to its own property. The first count of Amoco's complaint is not a claim for indemnification for the claims made in the third party actions. In its brief, however, Amoco argues that its claim for indemnification includes not only losses resulting from damage to its own property, but also future losses arising from the two additional third party actions. In effect, Amoco attempts to incorporate the two separate third party actions into its action against Liberty. Amoco mistakenly relies on dictum in the trial court's memorandum of decision to support its contention that the third party actions are relevant. For example, the trial court acknowledged that two additional third party actions against Amoco were pending and that § 52-598a would not apply to those actions because they had not yet been reduced to judgment or the subject of a settlement. See General Statutes § 52-598a. The trial court's decision to grant summary judgment in favor of Liberty on the first count of Amoco's complaint, however, was based solely on the fact that the statute of limitations for breach of contract claims set forth in § 52-576 (a) barred Amoco's claim. The trial court's reference to the additional third party actions was not essential to its decision. Accordingly, our decision today is limited to Amoco's claim for losses to its own property.

judgment as a matter of law. Such questions of law are subject to plenary appellate review." (Internal quotation marks omitted.) *Mytych* v. *May Dept. Stores Co.*, 260 Conn. 152, 158–59, 793 A.2d 1068 (2002).

As a threshold matter, we must properly characterize Amoco's claim for "indemnification." Our analysis begins with the contract provision on which Amoco relies in asserting its claim in count one of its complaint. Among other things, that provision purports to require Liberty to *reimburse* Amoco for and *indemnify* Amoco against loss, costs, damage, expense, claims and liability arising out of work performed by Liberty under the contract. Count one of Amoco's complaint is based solely on damage to Amoco's property allegedly caused by Liberty's negligent and improper installation of the tank, not from losses that arise from Amoco's liability to a third party. See footnote 8 of this opinion. Count one, therefore, is improperly characterized as a claim for indemnification; it is, rather, a claim for damages for Amoco's own losses. Although Amoco maintains that its claim arises under a provision of its contract with Liberty entitled "Liability and Indemnity," a claim for indemnity and a claim for one's first party losses are not one and the same.

To further illustrate why Amoco's claim is not, in reality, an indemnification claim, a brief discussion of our jurisprudence on indemnity agreements is necessary. In Connecticut, there are cases that are instructive when determining when an action to enforce an indemnity contract accrues. The logic and rationale underlying our indemnity case law are based on the premise that an action for indemnification is one in which one party seeks reimbursement from another party for losses incurred in connection with the first party's liability to a third party. In the present action, however, Amoco does not seek indemnification for losses arising

from liability to a third party. Consequently, the cases upon which Amoco relies are inapposite.

Specifically, the concept of indemnity usually involves an indemnitor, *A*, and an indemnitee, *B*, who enter into a contract whereby *A* agrees to indemnify *B* for any money *B* becomes legally obligated to pay to a third party. In interpreting indemnity agreements, we frequently have distinguished between agreements that indemnify against loss and agreements that indemnify against liability. Both types of agreements, however, protect the indemnitee against claims asserted by third parties against the indemnitee. "Generally, indemnity agreements fall broadly into two classes, those [in which] the contract is to indemnify against liability and those [in which] it is to indemnify against loss. In the first, the cause of action arises as soon as liability is incurred, but in the second it does not arise until the indemnitee has actually incurred the loss. . . . Whe[n] an indemnity agreement, however, indemnifies against liability as well as against loss . . . the indemnitee does not have to wait until the loss occurs, but may sue on the agreement as soon as liability is incurred." (Internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 306, 685 A.2d 305 (1996); see also *Fairfield* v. *D'Addario*, 149 Conn. 358, 361, 179 A.2d 826 (1962); *Calamita* v. *DePonte*, 122 Conn. 20, 23, 187 A. 129 (1936); *Morehouse* v. *Employers' Liability Assurance Corp.*, 119 Conn. 416, 424, 177 A. 568 (1935); *Balboa Ins. Co.* v. *Zaleski*, 12 Conn. App. 529, 534–35, 532 A.2d 973, cert. denied, 206 Conn. 802, 535 A.2d 1315 (1987).

The distinction between agreements to indemnify against loss and agreements to indemnify against liability derives from the concept of indemnity as it has been understood for more than 140 years, which is that a loss in the context of indemnity is the payment that discharges a liability. For example, in discussing a bond

of indemnity, which is referred to as an agreement to indemnify against loss only, we stated that "[i]t gives no cause of action until the petitioner is damnified, by being obliged to *pay* some indorsement for which he has made . . . . This event has not yet happened; no payment has been made, and no damage has been suffered by the petitioner; and hence there is no breach of the bond or cause of action upon it." (Emphasis in original.) *Monson* v. *Lawrence*, 27 Conn. 579, 585 (1858). Thus, under an agreement to indemnify against loss only, it is theoretically impossible for an indemnitee to have an actionable claim against the indemnitor until the indemnitee actually has paid something he is legally obligated to pay.

Conversely, an action to enforce an agreement to indemnify against liability only would accrue as soon as an indemnitee becomes liable to a third party. See, e.g., *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, supra, 239 Conn. 306. Our conclusion that actions to enforce the terms of an indemnity agreement accrue at different times, depending on whether the agreement covers loss or liability, is consistent with the basic principle of contract law that accrual is measured from the point in time when the plaintiff first could have successfully maintained an action. *Polizos* v. *Nationwide Mutual Ins. Co.*, 255 Conn. 601, 609, 767 A.2d 1202 (2001).

Finally, we also have acknowledged that some indemnification agreements constitute agreements to indemnify against both loss and liability. See *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, supra, 239 Conn. 307. When an agreement indemnifies against both loss and liability, we have concluded that the statute of limitations begins to run as soon as liability is incurred. Id. It is logical that the action accrues when liability is incurred because if loss is the payment that discharges the liability, loss will always follow liability.

Thus, the first moment in time when an indemnitee can successfully maintain an action to enforce the terms of an indemnity agreement that indemnifies against both loss and liability is when liability is incurred.

Amoco has construed its agreement with Liberty in a manner that would support the proposition that its claim is one for indemnification and that its action accrued in 1994, when it incurred losses arising out of damage to its own property. For example, Amoco contends that its agreement should be construed as one that indemnifies against both loss and liability. Interpreting the agreement as such, Amoco contends that its claim for losses incurred as a result of damage to its own property is a claim for indemnity against loss. Amoco further implies that its action did not accrue until it actually incurred losses in 1994. Amoco's reliance on indemnity cases as controlling authority, however, is misplaced because the cases upon which it relies deal with indemnification claims whereby the loss incurred is the result of legal liability to a third party. See *Fairfield* v. *D'Addario*, supra, 149 Conn. 361; *Morehouse* v. *Employers' Liability Assurance Corp.*, supra, 119 Conn. 417–18. Amoco's claim for losses incurred as a result of damage to its own property, not as a result of third party liability, is not a claim for indemnification at all but, rather, a claim for damages for its own losses arising out of Liberty's allegedly negligent and improper installation of the tanks. Thus, the rationale behind cases such as *24 Leggett Street Ltd. Partnership*[9] and its predecessors; see, e.g., *Fairfield*

---

[9] We note that our decision in *24 Leggett Street Ltd. Partnership* involved an indemnification action in which the indemnitee sought indemnification for losses incurred from the remediation of its property, not for losses incurred in connection with liability to a third party. See *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, supra, 239 Conn. 285–86. Although we discussed when indemnification actions accrue; see id., 306; the portion of the opinion that distinguished between agreements that indemnify against liability and agreements that indemnify against loss was dictum. Our holding in *24 Leggett Street Ltd. Partnership* was limited to our conclusion

v. *D'Addario*, supra, 361; *Morehouse* v. *Employers' Liability Assurance Corp.*, supra, 424–25; one of which Amoco relies on as controlling authority, logically cannot be applied to cases involving claims for losses that do not arise from liability to a third party.

Amoco cannot convert, for purposes of determining the applicable statute of limitations and accrual date, what otherwise is a breach of contract claim into an indemnification claim simply by labeling it as such in the pleadings. Although Amoco seeks "indemnification" from Liberty in the first count of its complaint, Amoco effectively seeks enforcement of a specific contract provision that provides reimbursement for loss. Thus, the claim that Amoco asserts in count one of its complaint constitutes a breach of contract claim and, accordingly, § 52-576 (a) furnishes the applicable statute of limitations.

Notwithstanding our conclusion that Amoco's claim is not an indemnification claim, there is another reason why Amoco's reliance on § 52-598a is misplaced. General Statutes § 52-598a provides that a party seeking indemnification may bring an indemnification action within three years from the date an action against it, *by a third party, has been determined "by either judgment or settlement."* (Emphasis added.) Amoco did not allege in count one of its complaint that it sought indemnification for losses it had incurred pursuant to either a judgment or settlement in a third party action.[10] Rather, Amoco alleged that it had "a right to indemnification in accordance with the terms and provisions of its contract with [Liberty] for all damages . . . incurred as a result of [the leaking tank]." Thus, we agree with the trial court that § 52-576 (a) rather than § 52-598a applies to Amoco's claim.

that once a cause of action accrues, damages are not limited to losses actually incurred. Id., 307.

[10] See footnote 8 of this opinion.

Having concluded that Amoco's contract claim is controlled by § 52-576 (a), we must determine when Amoco's cause of action accrued. On the basis of the foregoing analysis, we conclude that cases dealing with indemnification claims and providing a framework for determining when an action accrues are inapposite. Thus, when one party seeks reimbursement for losses that do not arise from liability to a third party and merely labels the claim as one for indemnification, as Amoco has done in the present case, we must apply fundamental principles of contract law to determine when the action accrues.

"The law concerning when a breach of contract action accrues is well settled. This court has stated that [i]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. . . . Although the application of this rule may result in occasional hardship, [i]t is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action." (Citations omitted; internal quotation marks omitted.) *Tolbert* v. *Connecticut General Life Ins. Co.*, 257 Conn. 118, 124–25, 778 A.2d 1 (2001). "While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have successfully maintained an action." (Internal quotation marks omitted.) *Polizos* v. *Nationwide Mutual Ins. Co.*, supra, 255 Conn. 608–609.

Amoco alleged in its complaint that Liberty's negligent and improper installation of the tank, as well as its failure to inspect and test the tank, resulted in damage to Amoco's property. Amoco alleges that, because

it sustained damages in connection with Liberty's work under the contract, it had a right to seek reimbursement under the terms of the contract. Amoco did not allege, either in its complaint or in its reply to special defenses, nor did it raise on appeal, any facts to support a theory of fraudulent concealment. Thus, Amoco's claim accrued in 1988 upon completion of Liberty's installation of the tank and other related services performed in connection with that installation.

Amoco's action accrued in 1988 because Liberty's completion of installation marked the first point in time that Amoco sustained a loss, thereby triggering the right to maintain an action against Liberty under the provisions of the agreement. To conclude that Amoco did not suffer a loss until it actually discovered and paid for damage to its property would contravene well established principles of contract law. See *Tolbert* v. *Connecticut General Life Ins. Co.*, supra, 257 Conn. 124–25. Moreover, such a conclusion would allow a party to toll the statute of limitations on contract claims indefinitely by merely waiting to pay for losses already incurred.

We conclude that Amoco's claim constituted a claim for breach of contract. Consequently, § 52-576 (a) was the operative statute of limitations. Amoco's claim accrued in 1988, when Liberty completed its work under the contract. Thus, Amoco's claim is barred by § 52-576 (a) inasmuch as Amoco filed its action in 1996, more than six years after the claim accrued in 1988.

The judgment is affirmed.

In this opinion the other justices concurred.