[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTIONS FOR SUMMARY JUDGMENT (##220, 221 and 222)
The plaintiff brings this action pursuant to the Connecticut Environmental Protection Act, specifically General Statutes § 22a-16, seeking declaratory and injunctive relief relating to the construction of the Clinton Crossing Premium Outlet Center (Clinton Crossing) located in Clinton, Connecticut, and owned by the defendant Chelsea G.C.A. Realty Partnership, LP (Chelsea). The plaintiff seeks to invalidate the site plan approval issued by the defendant Town of Clinton Planning Zoning Commission (zoning commission) and the wetlands permit issued by the defendant Town of Clinton Inland Wetlands Conservation Commission (wetlands commission).
The complaint is in three counts. In the first count, the plaintiff maintains that Chelsea was required to seek an amendment of the 1986 wetlands map and boundary, inasmuch as it differed substantially from the wetlands delineation set forth in Chelsea's 1994 application for a wetlands permit. In the second count, the plaintiff alleges that the zoning commission and the wetlands commission were informed of the differences between the 1986 map and the 1994 delineation performed in connection with Chelsea's permit application, and that Chelsea intentionally or with gross negligence insisted that these maps were accurate, and misled these agencies into approving its application. In the third count, the plaintiff claims that the agencies knew or reasonably should have known that Chelsea's site plans were inconsistent with the 1986 map, and negligently or willfully refused to comply with state statutes and town regulations for changing the established wetland boundaries.
The plaintiff, Chelsea, and the wetlands and zoning commissions all have moved for summary judgment. The parties are in agreement that there are no disputed material facts. There is no dispute that the 1986 wetlands map differs from the wetlands map used to approve the regulated CT Page 2266 activities by Chelsea in 1995. As compared to the latter, the 1986 map contains additional wetlands of slightly less than one acre. It also is not disputed that the 1986 wetlands map was never amended, and no attempt was made to amend it pursuant to General Statutes § 22a-42a (b)
The essence of the plaintiff's complaint is that Chelsea was required to seek an amendment to the 1986 map pursuant to General Statutes §22a-42a (b), and in failing to do so, its permit to conduct regulated activities on wetlands is invalid and it has, in violation of General Statutes § 22a-16, caused "unreasonable pollution, impairment or destruction of the environment."
The undisputed factual background of the development of Clinton Crossing is as follows. The Town of Clinton (town) on or about June 27, 1974, adopted regulations concerning inland wetlands applications and procedures. Pursuant to these regulations, and in conformance with General Statutes § 22a-42a (b), an inland wetlands map for the town was established. The town wetlands map set forth wetlands on the 47-acre parcel that eventually was developed as Clinton Crossing.
In 1986, LWJ Corporation, then owner of the property which is included within the Clinton Crossing 47-acre parcel, filed an application with the wetlands commission to amend, change and/or appeal the wetlands boundaries on the official town map in order to set the precise location of those wetland boundaries within its property. Pursuant to General Statutes § 22a-42a (b), the wetlands commission in 1986 amended the town's wetlands map to specifically set forth the wetlands on the subject property pursuant to an A-2 survey standard. The LWJ property, which was subject to the 1986 inland wetlands map, is part of the property purchased by Chelsea and developed as Clinton Crossing. Chelsea's property also included a portion of land which was not a part of the LWJ property.
The 1986 map has not been the subject of any General Statutes §22a-42a (b) application to amend, change or repeal the wetlands boundary. The defendants were aware of the 1986 wetlands map when Chelsea sought to develop Clinton Crossing and obtain the necessary wetlands commission permit, as well as zoning approval for the project. In support of its application to conduct regulated activity in a wetlands area, Chelsea submitted, pursuant to General Statutes § 22a-42a (c) (d), a map disclosing and delineating substantially fewer wetlands than were shown to exist by the 1986 A-2 wetlands survey map previously approved by the wetlands commission in December of 1986.
The wetlands commission accepted Chelsea's application to conduct CT Page 2267 regulated activity under General Statutes § 22a-42a (c) (d), on the basis of the wetlands map prepared by Chelsea and attached to its application laying out the location of wetlands. Chelsea was granted a permit to do work in a regulated wetlands area, which work, according to the Chelsea wetlands map, would not disturb more than .37 of an acre of wetlands property. A comparison of the 1986 wetlands map to the project map reveals, however, that a substantially larger area of wetlands property was disturbed, in excess of one acre.
Pursuant to Practice Book § 17-49, "summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Pelletierv. Sordoni/Skanska Construction Co., 262 Conn. 372 (2003); Amoco Oil Co.v. Liberty Auto Electric Co., 262 Conn. 142, 147-48 (2002).
The dispositive legal issue in this case is as follows: Does a property owner seeking permission to conduct a regulated activity under General Statutes § 22a-42a (c) (d), who observes a difference between his wetlands map drawn in conjunction with his permit application and the town wetlands map developed pursuant to General Statutes § 22a-42a
(b), have a duty to seek an amendment to the town wetland map pursuant to § 22a-42a (b) ? The court answers this question in the negative and renders judgment for the defendants.
The clear language of General Statutes § 22a-42a (b) provides a procedure for amending the wetlands boundaries shown on the town's official map, but does not expressly address the issue of when an amendment is required.
The defendants correctly point out that the town wetlands map drawn pursuant to Section 3.1 of the town's inland wetland regulations is a map that "delineates the general location and boundaries of inland wetlands and the bottom of watercourses . . . In all cases, a precise location of a regulated area shall be determined by the actual character of the land, the distribution of regulated soil types, and locations of watercourses." These specifications are reinforced by Section 7 of the town regulations outlining application requirements for regulated wetlands activities. For example, Section 7.4.a2 requires that the site plan include "wetland and watercourse boundaries as flagged in the field by a certified soil scientist." Section 7.4.a3 requires mapping of soil types consistent with the categories established by the National Cooperative Soil Survey. Section 7.4.a4 requires two-foot contours in areas of proposed regulated activity. CT Page 2268
The distinction between the requirements of a town wetlands map and a map drawn in conjunction with an application to permit regulated activity was recognized in Branhaven LLC v. Branford Inland/Wetlands Commission, Superior Court, judicial district of New Haven, Docket No. 398614 (July 2, 1998, Downey, J.) (22 Conn.L.Rptr. 303). In that case, the trial court rejected the argument that the wetlands commission violated General Statutes § 22a-42a (b) when it approved an application for regulated wetlands activity, even though there was a difference between the location of the actual wetlands boundary.
 Plaintiffs argue that the commission's action was illegal in that it constituted a boundary change, and was done without compliance with the requirements of General Statutes § 22a-42a (b), the statute governing establishment of boundaries by regulation. The court agrees with the Commissioner of Environmental Protection that this claim is beyond the scope of permissible intervention under § 22a-19. Even were we to concede that this claim falls within that scope, the claim is without merit. As stated in regulations, section 3, titled Inventory of Regulated Areas, the map of regulated areas, established and amended pursuant to General Statutes § 22a-42a (b), delineates the general
location and boundaries of inland wetlands . . . In contrast, an applicant for a permit to conduct regulated activities under General Statutes § 22a-42a (d) is expected to delineate and compute the actual and current extent of wetlands to be affected. There is no requirement, stated or implied, that a commission, having determined the actual boundary of a wetland, delineated in the course of a proceeding to conduct regulated activities, must interrupt the permit process to call a hearing to amend the town map. We must be careful not to bog local agencies down in a morass of technical requirements which serve no useful purpose. See Sampieri v. Inland/Wetlands Agency, [226 Conn. 579, 596].
(Emphasis added.) Id.
Judge Downey's caution that we must not bog down local agencies with technical difficulties serving no useful purpose is a truism applicable to the facts presented here. The wetlands commission on May 3rd and June 7, 1994, held lengthy public hearings on Chelsea's application. The Clinton Organization for Responsible Development (CORD) opposed the Clinton Crossing development, and during the May 3, 1994, public hearing, CORD filed notice of intervention pursuant to General Statutes § 22a-19. The plaintiff was a member of CORD and helped fund the litigation.
The wetland commission conducted a site visit on the property on May CT Page 2269 10, 1994, accompanied by approximately one dozen members of CORD. During the site walk, the wetlands commission and the others present traversed the property to review the proposed regulated activity.
The applicant, Chelsea, presented numerous experts in support of its application, including a soil scientist, engineers and a biologist. A wetlands map of the site was submitted, and references to the 1986 map were presented to and considered by the wetlands commission during the hearing process.
Specific submissions to the wetlands commission, both the May 19th letter from Paul Neary and a memorandum submitted at the June 7th public hearing, raised the issue of the discrepancy between Chelsea's wetlands delineation and the 1986 map. These submissions were considered by the wetlands commission during the hearing process. The wetlands enforcement officer stated at the June 7th public hearing that she and the town engineer were satisfied with the wetland boundaries set forth in the application. The chairman of the wetlands commission testified by deposition that she conducted multiple site walks so that the protesters could present their opinions on the accuracy of the wetlands boundaries.
An independent investigation of the wetlands boundary of the property and the discrepancy alleged by the plaintiff was conducted by Steve Tessitore, a soil scientist, employed at the time by the State of Connecticut Department of Environmental Protection. Mr. Tessitore concluded that the Chelsea delineation was proper. The United States Army Corp of Engineers and the U.S. Environmental Protection Agency also sent representatives to the property to examine the wetlands boundaries, and those agencies also concluded that the Chelsea delineation of the wetlands was proper.
The wetlands commission discussed the boundaries at length during its deliberations, including the map submitted, and concluded that the application accurately set forth the wetland boundaries. Chelsea's application was approved by a 4 to 3 vote at the July 5, 1994, meeting of the wetlands commission.
In further support of summary judgment for the defendants is the inability of the plaintiff to demonstrate unreasonable impairment and destruction of wetlands pursuant to General Statutes § 22a-16. Our Supreme Court's decision in City of Waterbury v. Town of Washington,260 Conn. 506, 800 A.2d 1102 (2002), addressed the requirement of unreasonable environmental harm in the context of a General Statutes § 22a-16 claim. CT Page 2270
In the City of Waterbury case, the claim was whether Waterbury's excessive diversion of water from the Shepaug River unreasonably impaired the public trust in the river and thereby violated the CEPA (Connecticut Environmental Protection Act General Statutes § 22a-14 through 22a-20.) The Supreme Court concluded that:
 [when] the legislature has enacted an environmental legislative and regulatory scheme specifically designed to govern the particular conduct that is the target of the action, that scheme gives substantive content to the meaning of the word unreasonable as used in the context of an independent action under CEPA. Put another way, when there is an environmental legislative and regulatory scheme in place that specifically governs the conduct that the plaintiff claims constitutes an unreasonable impairment under CEPA, whether the conduct is unreasonable under CEPA will depend on whether it complies with that scheme.
 We draw this conclusion from the overriding principle that statutes should be construed, where possible, so as to create a rational, coherent and consistent body of law . . . It would be inconsistent with that principle to conclude, absent some clear indication to the contrary, that the legislature intended that the same conduct that complies with an environmental legislative and regulatory scheme specifically designed to govern it, nonetheless could be deemed by a court to be an unreasonable impairment of the environment. Put still another way, it would be anomalous to conclude that the legislature has, as a general matter, enacted an environmental regulatory scheme that runs on two different tracks with respect to the same conduct: one that requires compliance with specific criteria promulgated by a regulatory agency pursuant to a specific legislative enactment; and a second that lodges in a court the determination of whether the same conduct comes within the very general standard of reasonableness, irrespective of whether it is in compliance with those specific criteria. Thus, in the present case, because we conclude . . . that, because the trial court found in effect that the Shepaug River is a stocked watercourse, and because both the defendants and the department have in this appeal assumed the propriety of that finding, the minimum flow statute and the regulations adopted pursuant to it apply to the Shepaug River. Therefore, the question of whether the impairment of the Shepaug River is unreasonable depends on whether its impaired flow meets the requirements of that statute and those regulations.
(Citations omitted; internal quotation marks omitted.) Id., 557-58.
In that case, General Statutes § 26-141a through 26-141c, which CT Page 2271 governs the minimum flow of water in watercourses stocked with fish, was the standard by which the court had to determine whether Waterbury "unreasonably" impaired the Shepaug River. Thus, in evaluating whether Waterbury's release of water met the requirements of the minimum flow regulations, the court found that even if Waterbury impaired the river, that impairment would not necessarily constitute an unreasonable impairment under General Statutes § 22a-16. The case was reversed with directions to the trial court to determine compliance with the minimum flow requirements.
In the instant case, Chelsea complied with the specific statutory and regulatory provisions regarding permitted activities impacting wetlands, which compliance was determined satisfactory by independent agencies. Such compliance cannot constitute an "unreasonable" impairment for purposes of General Statutes § 22a-16. For this reason as well, summary judgment must enter for the defendants.
Summary judgment enters for the defendants on all counts. The plaintiff's motion for summary judgment (#222) is denied.
Robert F. McWeeny, J. CT Page 2272